Jon B. Fougner (State Bar No. 314097)
Email: Jon@FougnerLaw.com
600 California Street, 11th Fl.
San Francisco, CA 94108
Telephone: (434) 623-2843
Facsimile: (206) 338-0783

*Attorney for Plaintiff Craig Cunningham*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG CUNNINGHAM,<br><br>             Plaintiff,<br><br>     v.<br><br>PERFORMANCE SLC LLC, PERFORMANCE SETTLEMENT LLC, DANIEL J. CRENSHAW, and DOES 1-10,<br><br>             Defendants. | Case No. 8:18-cv-01093<br><br>COMPLAINT FOR:<br>1. ILLEGAL ROBOCALLING, 47 U.S.C. § 227(b)<br>2. ILLEGAL TELEMARKETING, 47 U.S.C. § 227(c)<br>3. UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200 *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Craig Cunnginham, by his undersigned counsel, for this Complaint against Defendants Performance SLC LLC, Performance Settlement LLC, Daniel J. Crenshaw and Does 1-10 (collectively, "Performance" or "Defendants"), and their present, former and future direct and indirect parent companies, subsidiaries, affiliates and agents, alleges as follows:

## I. INTRODUCTION

1. <u>Nature of Action</u>. Plaintiff brings this cases under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), because Defendants made at least 63 nonconsensual telemarketing calls and at least 5 nonconsensual telemarketing text messages to his residential cellular telephone, each in violation of 47 U.S.C. § 227(c), which used artificial or prerecorded voices and/or were placed by an automatic telephone dialing system ("ATDS"), in violation of 47 U.S.C. § 227(b).

## II. PARTIES

2. <u>Plaintiff</u>. Plaintiff is a natural person, a "person" as defined by 47 U.S.C. § 153(39) and a citizen of the State of Texas.

3. <u>SLC</u>. Defendant Performance SLC LLC ("SLC") is a limited liability company organized under the laws of the State of California with its principal place of business at 17748 Sky Park Circle, Suite 150, Irvine, California 92614. Its sole member is Defendant Daniel J. Crenshaw.

4. <u>Settlement</u>. Defendant Performance Settlement LLC ("Settlement") lis a limited liability company organized under the laws of the State of California with its principal place of business at 17748 Sky Park Circle, Suite 150, Irvine, California 92614. Its sole member is Defendant Daniel J. Crenshaw.

5. <u>Crenshaw</u>. Defendant Daniel J. Crenshaw is a natural person and the chief executive officer of SLC and Settlement with his principal place of business at 17748 Sky Park Circle, Suite 150, Irvine, California 92614.

6. <u>Does</u>. The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein as Does 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as Does when such identities become known.

7. Each of the defendants sued herein was the principal, agent, or employee of the other, and was acting within the scope of such agency or employment. Each defendant sued herein was the co-conspirator of the other and was acting within the course and scope of a conspiracy formed amongst each of them. Each defendant sued herein aided and abetted the other with the intent that each would be successful in their mutual endeavors. Each defendant sued herein received money or property as a result of the conduct described herein without consideration therefore and/or with knowledge that the money or property was obtained as a result of the wrongful conduct described herein. Each entity sued herein is a shell organization, and is actually the alter ego of the other defendants sued herein.

### III.   JURISDICTION AND VENUE

8. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, because that claim:

    a.   arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff;

    b.   adds little complexity to the case; and

    c.   does not seek money damages, so it is unlikely to predominate over the TCPA claims.

9. Personal Jurisdiction. This Court has general personal jurisdiction over SLC and Settlement because each is a California LLC with its principal place of business in California.

10. This Court has general personal jurisdiction over Mr. Crenshaw because he resides in California.

11. This Court has specific personal jurisdiction over each of the Defendants because the illegal phone calls and text messages were sent by or at the direction of each from California.

12. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—i.e., the architecting and execution of Defendants' plan to send the illegal, automated, telemarketing calls and text messages—occurred in this District and because Defendants reside in this District.

### IV. THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

13. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

14. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

15. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

16. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

17. Separately, the TCPA and regulations promulgated thereunder impose consumer-protection limitations on telemarketing calls to residential and cellular telephones. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200.

18. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

19. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

20. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

21. FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter*

*of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23. For TCPA purposes, a text message is a "call." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-52 (9th Cir. 2009).

24. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## V. FACTUAL ALLEGATIONS

### A. The Worsening Problem of Robocalls and Illegal Telemarketing

25. Unfortunately, the problems Congress identified when it enacted the TCPA have grown only worse in recent years.

26. "Month after month, unwanted [communications], both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission." *In re Rules and Regulations Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

27. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July

22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC Chairman).

28. "The FTC receives more complaints about unwanted calls than all other complaints combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the TCPA of 1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6, 2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

29. In 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. For every month in the fiscal year, robocalls made up the majority of consumer complaints about Do Not Call violations. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-national-do-not-call-registry-data-book-dnc.

30. Recently, *The New York Times* reported extensively on the surging number of robocall complaints filed by consumers with the FTC and widespread consumer outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

**B.     Defendants' Role in This Explosion of Illegal Robocalling**

31. Performance purports to sell services that consolidate, negotiate or eliminate debt. *Solve Your Student Loans and Get on with Life*, Performance SLC, http://www.performanceslc.com/ (last visited June 15, 2018); *Welcome to Financial Freedom*, Performance Settlement, http://www.performancesettlement.com/ (last visited June 15, 2018).

32. People are complaining online about unsolicited telemarketing calls and texts from Defendants. *E.g.*, *Performance Settlement*, Better Business Bureau, https://www.bbb.org/sdoc/business-reviews/financial-services/performance-settlement-in-irvine-ca-172009579/reviews-and-complaints?section=complaints (Sept. 27, 2018) ("This company, Performance SLC and Performance Settlement, engages is a massive fraudulent scheme of wire fraud through illegal telemar[]keting to protected and DNC registered cell phones by us[]ing a robo-dialer or ATDS in violat[io]n of 47 USC section 227(b)(1)(A). I was repeatedly called on my cell[] phone. My phone is on the do not call registry.").

33. Moreover, the phone numbers that appeared as the caller IDs of the phone calls from Defendants to Plaintiff are the subject of consumer complaints. *E.g.*, *Student Loan Scam*, Reddit, https://www.reddit.com/r/Scams/comments/72oa79/student_loan_scam/ (statement of Canis07) (last visited June 16, 2018) ("I've been getting a lot of calls from 1-888-534-4656 pertaining to student loans. They leave a callback number as 1-310-803-9561. When I call them, they try to ask questions about my outstanding student loans (I don't have any)."); *888-534-4656 Complaints*, Reported Calls, https://www.reportedcalls.com/8885344656 (Oct. 2, 2017) (reporting prerecorded message or robocall from (888) 534-4656 regarding debt reduction); *Who Called You From (949) 201-1692?*, Should I Answer?, https://www.shouldianswer.com/phone-number/9492011692 (last visited June 16, 2018) (showing a report about a "telemarketer" with "student loans" and another report about a "scam call" with a "debt forgiveness program"); *(714) 400-2617*, Security Master, https://phonenumber.cmcm.com/us/7144002617 (last visited June 16, 2018) (reporting "harassment").

34. One of Performance's strategies for marketing its services is placing automated telemarketing text messages to those who have not consented to receive such solicitations, including Mr. Cunningham.

35. One of Performance's strategies for marketing its services is equipment that has the capacity to store or produce random or sequential telephone numbers to be called, using a random or sequential number generator.

36. One of Performance's strategies for marketing its services is placing calls with prerecorded or artificial voices to the residential cellular telephone numbers of consumers who have not provided prior express written consent to receive such telemarketing.

C. **Defendants' Illegal Robocalls to Plaintiff**

37. Mr. Cunningham never provided prior express written consent to receive calls or text messages from Defendants.

38. Mr. Cunningham never provided prior express consent to receive calls or text messages from Defendants.

39. Defendants knew that Mr. Cunningham had never provided prior express written consent to receive calls or text messages from Defendants.

40. Defendants knew that Mr. Cunningham had never provided prior express consent to receive calls or text messages from Defendants.

41. The total number of calls and text messages Mr. Cunningham received from Defendants is unknown, because the calls were relentless, used a variety of caller IDs and frequently came late at night or at other times when it was inconvenient to answer. So far, Plaintiff's investigation has revealed 63 nonconsensual telemarketing calls and 5 nonconsensual telemarketing text messages from Performance to Plaintiff's residential cellular telephone.

42. The calls and text messages sent to Mr. Cunningham advertised Defendants' services.

43. The advertised services were debt relief, negotiation and/or consolidation.

44. No emergency necessitated the calls or text messages.

45. Each text message was sent by an ATDS.

46. Each call was placed by an ATDS.

47. Most of the calls used a prerecorded or artificial voice.

48. Defendants' calls and text messages injured Plaintiff because they:

    a. interrupted him while working, spending time with family, working out and driving;

    b. invaded his privacy;

    c. annoyed him;

    d. harassed him;

    e. wasted his time;

    f. consumed his phone's battery life; and

    g. consumed his phone's limited data storage capacity.

**D. Defendants' Illegal Telemarketing to Plaintiff**

49. Plaintiff requested a copy of Settlement's do-not-call policy. Settlement stated that it had no such policy and refused to send Plaintiff anything.

50. Plaintiff requested a copy of SLC's do-not-call policy. SLC responded that it did not know what Plaintiff was referring to and did not provide a copy of the policy.

51. On information and belief, Defendants knowingly did not have a written do-not-call policy, available upon demand, while they were calling and sending text messages to Plaintiff.

52. On information and belief, Defendants knowingly failed to reasonably or adequately train their agents engaged in telemarketing on the existence and use of any do-not-call list.

53. Defendants knowingly made the solicitations without including therein all of the following: the name of the individual caller, the name of the person or entity on whose behalf the call is being made and/or a telephone number or address at which the person or entity may be contacted

- 10 -
COMPL.
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093 (C.D. Cal.)

E.   **Mr. Crenshaw's Control over Performance, Including its Illegal Robocalling and Telemarketing**

54. At all times relevant to the claims alleged herein, Mr. Crenshaw was the sole member of SLC and Settlement.

55. A "Borrower Beware" report by consumer finance site Nerd Wallet associates Mr. Crenshaw with SLC, Settlement and 5 other companies, at least 2 of which use the same Irvine address as SLC and Settlement.

56. Mr. Crenshaw directed the telemarketing at issue in this case.

57. Mr. Crenshaw was aware that SLC and Settlement were sending prerecorded robocalls and automated text messages *en masse* to people, including Plaintiff, who had not requested to be contacted by Defendants.

58. As Defendants' senior-most executive, Mr. Crenshaw had the power to stop these unsolicited telemarketing campaigns.

59. As Defendants' senior-most executive, Mr. Crenshaw hired, and had the power to fire, the executives managing the day-to-day operations of these illegal robocalling operations.

F.   **Catalog of Calls**

60. Due to the large volume of telemarketing by Defendants to Mr. Cunningham, his investigation is ongoing. Based on what is known so far, the following table summarizes the non-emergency, non-consensual telemarketing calls made by or on behalf of Defendants to Mr. Cunningham's cellular telephone. This table excludes the countless number of calls that went unanswered and that therefore do not appear in Plaintiff's phone records, as well as the calls from caller IDs that Plaintiff has yet to identify as belonging to Defendants.

| Date | Caller ID | Duration | Type |
| --- | --- | --- | --- |
| March 24, 2017 | (888) 534-4656 | 19s | Call |

| Date | Caller ID | Duration | Type |
|---|---|---|---|
| March 25, 2017 | (888) 534-4656 | 2m 9s | Call |
| March 25, 2017 | (888) 534-4656 | 4m 23s | Call |
| March 25, 2017 | (888) 534-4656 | 4m 19s | Call |
| April 11, 2017 | (714) 400-2617 | 32s | Call |
| April 12, 2017 | (714) 400-2617 | 13s | Call |
| April 17, 2017 | (714) 400-2617 | 30s | Call |
| April 19, 2017 | (714) 400-2617 | 47s | Call |
| April 20, 2017 | (714) 400-2617 | 51s | Call |
| April 21, 2017 | (714) 400-2617 | 20s | Call |
| April 21, 2017 | (714) 400-2617 | 3m 13s | Call |
| April 24, 2017 | (714) 400-2617 | 30s | Call |
| April 25, 2017 | (714) 400-2617 | 30s | Call |
| April 27, 2017 | (714) 400-2617 | 18s | Call |
| April 28, 2017 | (714) 400-2617 | 30s | Call |
| May 2, 2017 | (714) 400-2617 | 7m 7s | Call |
| May 4, 2017 | (888) 534-4656 | 20s | Call |
| May 9, 2017 | (949) 385-0591 | | Text message |
| May 10, 2017 | (949) 385-0591 | | Text message |
| May 11, 2017 | (949) 385-0591 | | Text message |
| May 12, 2017 | (949) 385-0591 | | Text message |
| May 15, 2017 | (949) 385-0591 | | Text message |
| May 19, 2017 | (949) 201-1692 | 10s | Call |
| May 22, 2017 | (949) 201-1692 | 31s | Call |
| May 22, 2017 | (888) 534-4656 | 1m 5s | Call |
| May 24, 2017 | (949) 201-1692 | 46s | Call |
| May 25, 2017 | (949) 201-1692 | 11s | Call |

| Date | Caller ID | Duration | Type |
|---|---|---|---|
| May 25, 2017 | (949) 201-1692 | 6s | Call |
| May 25, 2017 | (949) 201-1692 | 3s | Call |
| May 25, 2017 | (949) 201-1692 | 25s | Call |
| May 25, 2017 | (949) 201-1692 | 6s | Call |
| May 25, 2017 | (949) 201-1692 | 1s | Call |
| May 25, 2017 | (949) 201-1692 | Unknown; on information and belief, the caller promptly dropped the call | Call |
| May 26, 2017 | (949) 201-1692 | 36s | Call |
| May 30, 2017 | (949) 201-1692 | 21s | Call |
| May 30, 2017 | (949) 201-1692 | 1s | Call |
| May 31, 2017 | (949) 201-1692 | 10s | Call |
| June 1, 2017 | (949) 201-1692 | 14s | Call |
| June 2, 2017 | (949) 201-1692 | 21s | Call |
| June 6, 2017 | (949) 201-1692 | 37s | Call |
| June 8, 2017 | (949) 201-1692 | 21s | Call |
| June 14, 2017 | (949) 201-1692 | 23s | Call |
| June 19, 2017 | (949) 201-1692 | 9s | Call |
| June 20, 2017 | (949) 201-1692 | 23s | Call |
| June 22, 2017 | (949) 201-1692 | 18s | Call |
| July 7, 2017 | (949) 201-1692 | 30s | Call |
| July 7, 2017 | (949) 201-1692 | 30s | Call |
| July 11, 2017 | (949) 201-1692 | 30s | Call |
| July 12, 2017 | (949) 201-1692 | 30s | Call |

| Date | Caller ID | Duration | Type |
|---|---|---|---|
| July 14, 2017 | (949) 201-1692 | 30s | Call |
| July 18, 2017 | (949) 201-1692 | 6s | Call |
| July 20, 2017 | (949) 201-1692 | 6s | Call |
| July 24, 2017 | (949) 201-1692 | 28s | Call |
| July 28, 2017 | (949) 201-1692 | 22s | Call |
| August 4, 2017 | (929) 201-3145 | 32s | Call |
| August 4, 2017 | (888) 534-4656 | 13s | Call |
| August 10, 2017 | (888) 534-4656 | 20s | Call |
| August 11, 2017 | (888) 534-4656 | 21s | Call |
| August 16, 2017 | (888) 970-4329 | 50s | Call |
| August 22, 2017 | (888) 534-4656 | 5s | Call |
| August 22, 2017 | (888) 534-4656 | 5s | Call |
| August 22, 2017 | (888) 534-4656 | 5s | Call |
| August 22, 2017 | (888) 534-4656 | 5s | Call |
| August 24, 2017 | (888) 534-4656 | 5s | Call |
| August 25, 2017 | (949) 201-1692 | 5s | Call |
| August 26, 2017 | (888) 534-4656 | 5s | Call |
| August 30, 2017 | (888) 534-4656 | 5s | Call |
| August 30, 2017 | (888) 534-4656 | 4s | Call |

## VI.   FIRST CLAIM FOR RELIEF

**(Illegal Robocalling, 47 U.S.C. § 227(b))**

**(Against All Defendants)**

61. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

62. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1), by

making non-emergency telemarketing robocalls to Plaintiff's cellular telephone number without his prior express written consent.

63. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

64. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3) (hanging paragraph).

65. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency robocalls to cellular telephone numbers advertising debt negotiation services without the prior express written consent of the called party.

## VII. SECOND CLAIM FOR RELIEF
### (Illegal Telemarketing, 47 U.S.C. § 227(c))
### (Against All Defendants)

66. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. On information and belief, the foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

    a. a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

    b. training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); and,

    c. in the solicitations, the name of the individual caller, the name of the person or entity on whose behalf the call is being made and/or a telephone number or address at which the person or entity may be contacted, in violation of 47 C.F.R. § 64.1200(d)(4).

68. On information and belief, had Defendants abided by the requirements of 47 C.F.R. § 64.1200(d), they would not have sent Plaintiff the illegal telemarketing.

69. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

70. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5) (hanging paragraph).

71. Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call policy, available upon demand, and training thereon and (2) include the names of the individual caller and the entity on whose behalf the call is being made and a call-back number in every solicitation.

## VIII.   THIRD CLAIM FOR RELIEF
### (Unfair Competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*)
### (Against All Defendants)

72. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

73. Defendants' TCPA violations were committed in the State of California and targeted consumers and businesses across the country, including in the State of California, in violation of the "unlawful" prong of the UCL. *See O'Connor v. Lyft, Inc.*, No. 16-cv-00351-JSW, 2016 U.S. Dist. LEXIS 153705, at *14-15 (N.D. Cal. Apr. 14, 2016) (violating the TCPA violates the UCL).

74. Additionally, Defendants' misconduct violated the "unfair" prong of the UCL. It was unfair for Mr. Cunningham's private life and family time to be interrupted by automated telemarketing dozens of times. The safety risk posed by unscheduled and unsolicited calls and text messages to Mr. Cunningham and his family while he was driving was unfair. It is unfair that legitimate and law-abiding student loan services have to compete against Defendants, ultimately harming

consumers. Given that the unfair prong of the UCL "is intentionally broad, thus allowing courts maximum discretion," *State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (2d Dist. 1996), Defendants' harassment would have violated the UCL even in the absence of the TCPA.

75. Mr. Cunningham seeks a permanent injunction prohibiting Defendants and their affiliates and agents from continuing to violate the UCL by sending unsolicited telemarketing calls or text messages from or to the State of California.

76. Such an injunction will enforce an important right affecting the public interest and confer a significant benefit, whether pecuniary or non-pecuniary, on a large class of persons. Private enforcement is necessary and places a disproportionate financial burden on Plaintiff in relation to Plaintiff's stake in the matter, because the fraction of Defendants' illegal telemarketing that was directed to Plaintiff is, unfortunately, tiny.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against Defendants as follows:

A. Leave to amend this Complaint to name Does as they are identified and to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA and the UCL;

C. An order enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $204,000 in statutory damages arising from Defendants' 68 knowing or willful violations of 47 U.S.C. § 227(b) and 68 knowing or willful violations of 47 U.S.C. § 227(c);

E. An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

F.   An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law, equity and/or California Code of Civil Procedure section 1021.5; and

G.   Such further relief as the Court deems necessary, just, and proper.

## X.   DEMAND FOR JURY

Mr. Cunningham demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 20th day of June, 2018.

> By:   s/ Jon Fougner
> Attorney for Plaintiff
> E-mail: Jon@FougnerLaw.com