Jon B. Fougner (State Bar No. 314097)
jon@fougnerlaw.com
600 California Street, 11th Floor
San Francisco, California 94108
Telephone: (415) 577-5829
Facsimile: (206) 338-0783

*Attorney for Plaintiff Craig Cunningham*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PERFORMANCE SLC LLC, PERFORMANCE SETTLEMENT LLC, DANIEL J. CRENSHAW, and DOES 1-10,<br><br>　　　　Defendants. | Case No. 8:18-cv-01093-AG-AGR<br><br>**OPPOSITION TO MOTION OF DEFENDANT PERFORMANCE SLC, LLC FOR LEAVE TO FILE SUPPLEMENTAL PLEADING ASSERTING COUNTERCLAIM**<br><br>**Date:** Monday, April 29, 2019<br>**Time:** 10 a.m.<br>**Judge:** Hon. Andrew J. Guilford<br>**Location:** Court 10D, 411 W. 4th St., Santa Ana, CA 92701-4516<br><br>**Action Filed:** June 20, 2018<br>**Discovery Fact Cut-Off:** May 20, 2019<br>**Final Pre-Trial Conference:** August 5, 2019<br>**Jury Trial:** August 20, 2019 |

- i -

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................. 1

II.  ISSUE TO BE DECIDED ................................................................ 2

III. FACTUAL BACKGROUND ............................................................ 3

   A.   Facts ..................................................................................... 3

   B.   SLC's Facts .......................................................................... 5

IV.  LEGAL STANDARD ....................................................................... 5

V.   ARGUMENT AND AUTHORITIES ................................................ 7

   A.   On four of its five proposed causes of action, SLC failed to meet and confer, as required by local rule. ......................................................... 8

   B.   SLC has failed to establish good cause. It wasn't diligent. ............................. 9

   C.   Leave should be denied because of undue delay and prejudice. .................. 11

      1.   Undue delay ................................................................... 11

      2.   Prejudice ........................................................................ 12

   D.   The Court should decline to exercise supplemental jurisdiction over the call-recording claims because they raise novel and complex questions of state law. 17

VI.  SUMMARY ..................................................................................... 20

- ii -

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

*Ameranth, Inc. v. Genesis Gaming Sols., Inc.*, No. SACV 11-0189 AG (RNBx), 2014 U.S. Dist. LEXIS 195025 (C.D. Cal. Mar. 31, 2014) ..................... 7, 15, 16

*AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946 (9th Cir. 2006)...... 11

*Boyack v. Salon Mgmt. Corp.*, No. SACV 18-01233 AG (DFMx), 2019 U.S. Dist. LEXIS 23678 (C.D. Cal. Feb. 11, 2019) .................................................... 9

*Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011).......................................... 13

*Connor v. Lyft, Inc.*, No. 16-cv-00351-JSW, 2016 U.S. Dist. LEXIS 153705 (N.D. Cal. Apr. 14, 2016)................................................................................... 13

*Dragicevich v. J.P. Morgan Chase Bank, N.A.*, 623 F. App'x 312 (9th Cir. 2015) . 8

*Ecojet, Inc. v. Luraco, Inc.*, No. SACV 16-00487-AG-KES, 2016 U.S. Dist. LEXIS 187949 (C.D. Cal. Dec. 13, 2016) ..................................................... 10, 11

*Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903 (Cal. 1997) ................. 13, 14

*Flanagan v. Flanagan*, 41 P.3d 575 (Cal. 2002) ................................................. 14

*Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-03333-SI, 2018 U.S. Dist. LEXIS 193485 (N.D. Cal. Nov. 13, 2018).......................................................... 14

*Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604 (9th Cir. 1992).......... 2, 9, 11

*Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018).................................. 13

*Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914 (Cal. 2006)..... 17, 18, 19, 20

*L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795 (9th Cir. 2017) ............................ 12

*LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (Cal. App. 4th 1997) .......................... 13

*Lopez v. Wells Fargo Bank, N.A.*, No. SACV 16-1409 AG (KESx), 2016 U.S. Dist. LEXIS 144380 (C.D. Cal. Oct. 17, 2016) ........................................................ 8, 9

*Portney v. CIBA Vision Corp.*, No. SACV 07-854 AG (MLGx), 2008 U.S. Dist. LEXIS 127184 (C.D. Cal. May 15, 2008) ....................................................... 11

*Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2017 U.S. Dist. LEXIS 5311 (C.D. Cal. Jan. 3, 2017).............................................................. 17

*Ramos v. Capital One, N.A.*, No. 17-cv-00435-BLF, 2017 U.S. Dist. LEXIS 118162 (N.D. Cal. July 27, 2017) .................................................. 14, 15

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)...................... 3

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- iii -

Opp'n Mot. Def. Performance SLC, LLC Leave File Supp'l Pleading
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

*Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132 (9th Cir. 1998) ............... 16

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017)............ 12

*Zephyr v. Saxon Mortg. Servs.*, 873 F. Supp. 2d 1223 (E.D. Cal. 2012)............... 18

**Statutes**

28 U.S.C. § 1367(c)(1) ......................................................................... 17

47 U.S.C. § 227(b)(1)(A)(iii) .......................................................... 1, 12

47 U.S.C. § 227(c) .................................................................................. 13

Cal. Bus. & Prof. Code § 17204 ......................................................... 13

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ......................................... 12

Cal. Penal Code § 632 ............................................................... 1, 14, 17

Cal. Penal Code § 632.7 ...................................................... 1, 5, 14, 17

Cal. Penal Code § 637.2 ......................................................................... 5

Tex. Penal Code § 16.02 ...................................................................... 18

**Rules**

C.D. Cal. Civ. L.R. 7-3 ........................................................................... 8

C.D. Cal. Civ. L.R. 7-4 ........................................................................... 8

Fed. R. Civ. P. 12(a)(1)(A)(i) .............................................................. 3

Fed. R. Civ. P. 15(a)(2) ....................................................................... 11

Fed. R. Civ. P. 16(b)(4) ......................................................................... 9

**Regulations**

47 C.F.R. § 64.1200(c)(2) .................................................................... 13

47 C.F.R. § 64.1200(d)(1)-(4) ............................................................ 13

47 C.F.R. § 64.1200(e) ......................................................................... 13

47 C.F.R. § 64.1200(f)(8) ....................................................................... 1

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) ........................................................ 3

- iv -

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

1

## I.    **INTRODUCTION**

2      In violation of the Telephone Consumer Protection Act ("TCPA"), 47

3  U.S.C. § 227(b)(1)(A)(iii), but in keeping with its regular business practices,

4  Defendant Performance SLC LLC ("SLC") made telemarketing calls to Plaintiff

5  Craig Cunningham's cellular telephone using an automated telephone dialing

6  system ("ATDS") without the prior express written consent required by the

7  TCPA's implementing regulations, 47 C.F.R. § 64.1200(f)(8). (Dkt. No. 37-4 (logs

8  produced by SLC admitting to use of ATDS to call Plaintiff); Dkt. No. 37-7 at

9  51:19-52:8, 75:3-7, 76:15-22 (given three separate chances, SLC's CEO fails to

10  testify to Plaintiff's consent).) This case concerns those TCPA violations. (*See*

11  *generally* Compl., Dkt. No. 1.)

12      In violation of the California Invasion of Privacy Act ("CIPA"), Cal. Penal

13  Code §§ 632, 632.7, but in keeping with its regular business practices, SLC, a

14  California business, secretly recorded all of these calls despite the fact that Plaintiff

15  is a consumer, was on his cellular telephone, and frequently disclosed private

16  financial information at SLC's express prompting—as Plaintiff learned during this

17  litigation. (Decl. Jeremy E. Branch Supp. Mot. Performance SLC, LLC Leave File

18  Supp'l Pleading Asserting Counterclaim, Ex. A, Def. Performance SLC, LLC's

19  Counter-Claim Unlawful Recording, Fraud, Fraud Nondisclosure, and Intentional

20  Misrepresentation, Dkt. No. 34-1, at 6[1] ¶ 3; Decl. Craig Cunningham Supp. Opp'n

21  Mot. Def. Performance SLC, LLC Leave File Supp'l Pleading Asserting

22  Counterclaim ("Cunningham Decl.") ¶¶ 6, 9, 13-29.)

23      Now, after the last day to serve discovery requests (*Compare* Dkt. No. 25 at

24  2 ¶ 1.2; *with id.* at 1:15-16.), SLC asks the Court to jettison its scheduling order so

25  that SLC can add five counterclaims, the elements of and defenses to which have

26  virtually zero overlap with the extant claims. (Dkt. No. 34-1 at 11-15 ¶¶ 25-50;

27

28

---

[1] Herein, pincites to documents with CM/ECF headers are to the page numbers in those headers rather than the page numbers, if any, at the bottom of the page.

- 1 -

*accord id.* at 23-27 ¶¶ 25-50. *But see* Notice Mot. and Mot. Def. Performance SLC, LLC Leave File Supp'l Pleading Asserting Counterclaim ("Motion" or "Mot."), Dkt. No. 34, at 19:9-15 (failing to request leave to plead claims under California Penal Code section 632 or for fraud by nondisclosure).)

This eleventh hour disruption of the Court's scheduling order, on which Plaintiff has reasonably relied, should not be permitted. All parties, including SLC, submitted a joint Rule 26(f) report. (Dkt. No. 21.) The Court gave SLC almost the exact schedule it had requested. (*Compare* Dkt. No. 25 at 1:18-19 (trial set for August 20, 2019); *with* Dkt. No. 21 at 5:34 (SLC requests trial on August 19, 2019).) SLC was diligent neither with respect to investigating its ostensible claims nor with respect to alleging them. That ends the inquiry. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992).

If the Court looked further, though, it would find three additional reasons, each independently sufficient, for denying the Motion. <u>First</u>, on four of its five claims, SLC failed to meet and confer as required by Local Rule 7-3. <u>Second</u>, on all of its claims, SLC exhibited undue delay, the result of which would be to unfairly prejudice Plaintiff by requiring discovery to be re-opened and trial to be pushed far out. <u>Third</u>, the CIPA claims raise novel and complex questions of state law.

Accordingly, the Motion should be denied.

## II.    <u>ISSUE TO BE DECIDED</u>

When, due to no fault of the plaintiff, a defendant waits three months to take any discovery at all and then three more months after purportedly learning the relevant facts to move for leave to file counterclaims raising novel and complex questions of state law, should the Court revise its scheduling order and re-open discovery to allow amendment of pleadings?

### III.   FACTUAL BACKGROUND

**A.   Facts**

On June 20, 2018, Plaintiff filed this case against Defendants SLC, Performance Settlement LLC and Daniel J. Crenshaw. (Dkt. No. 1.) Plaintiff alleged that Defendants had violated the TCPA by robocalling[2] him without his prior express written consent and by engaging in telemarketing without the consumer protections mandated by the FCC under the TCPA. (*Id.* at ¶¶ 61-71.)

On June 21, 2018, the Court ordered the parties to attend a conference regarding how they would comply with Federal Rule of Civil Procedure 1. (Dkt. No. 12.)

On June 26, 2018, SLC was served with that order, process and the other papers in the case. (Dkt. No. 13.)

On July 9, 2018, the Court conducted the Rule 1 hearing. (Dkt. No. 16.) SLC did not attend. (*Id.*)

On July 17, 2018, SLC's answer was due. Fed. R. Civ. P. 12(a)(1)(A)(i). That day, Performance Settlement's representative requested, and Plaintiff's counsel granted, an extension of time to answer the complaint until July 18, 2018. (Decl. Jon B. Fougner Supp. Opp'n Mot. Def. Performance SLC, LLC Leave File Supp'l Pleading Asserting Counterclaim ("Fougner Decl.") ¶ 6 & Ex. A.)

July 18, 2018, came and went.

On August 3, 2018, Defendants answered the complaint, admitting: "As Defendants' senior-most executive, Mr. Crenshaw had the power to stop these

---

[2] The FCC and this brief refer to both text messages and telephone calls as "calls." *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-52 (9th Cir. 2009) (text message is a "call" under TCPA). The FCC and this brief refer to calls made with an ATDS and/or an artificial or prerecorded voice as "robocalls." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7964 ¶ 1 n.1 (2015).

unsolicited telemarketing campaigns." (*Compare* Dkt. No. 1 ¶ 58; *with* Dkt. No. 18 ¶ 58.)

On August 8, 2018, all parties conferred pursuant to Federal Rule of Civil Procedure 26(f). (Dkt. No. 21 at 1:25-2:2.)

On October 2, 2018, the Court ordered: "Absent good cause, any motion to join another party or to amend a pleading shall be filed and served within 60 days after the date of this Order," i.e., by December 1, 2018. (Dkt. No. 25 at 3 ¶ 3.) The Court further ordered that April 5, 2019, would be the last day to serve discovery requests. (*Compare id.* at 2 ¶ 1.2; *with id.* at 1:15-16.)

On October 12, 2018, and November 14, 2018, Defendants' counsel produced 16 recordings of calls to which Plaintiff was a party. (Cunningham Decl. ¶ 14.) On none of these recordings is Plaintiff heard stating that the call is being recorded. (*Id.* at ¶ 17.) On 14 of these recordings, no person or thing is heard stating that the call is being recorded. (*Id.*) On the other two, the only disclosure of recordation is made after Plaintiff had been asked, and had answered, questions about his personal finances. (*Id.* at ¶¶ 28-29.)

On November 1, 2018, SLC served its first discovery requests. (Fougner Decl. ¶ 7.)

On December 22, 2018, Plaintiff served SLC's counsel with discovery responses. (*Id.* at ¶ 8.) These included a sworn, objection-free interrogatory response that Plaintiff had recorded calls with Defendants. (*Id.*)

On January 30, 2019, SLC's counsel emailed Plaintiff's counsel regarding only one proposed "counterclaim for violations of California Penal Code §§632.7, 637.2 Unlawful Recording of Cellular and Wireless Telephone Calls," and no other purported claims. (*Id.* at ¶ 9 & Ex. B.) On February 6, 2019, counsel met and conferred about SLC's contemplated motion for leave to amend its answer to add that single counterclaim. (*Id.* at ¶ 10.)

- 4 -

On March 21, 2019, SLC noticed its Motion for April 8, 2019. (Dkt. No. 34 at 1:24-25.) The Court rescheduled the hearing to April 29, 2019. (Dkt. No. 36.)

**B.**   **SLC's Facts**

In support of the vast majority of its factual allegations, the Motion cites no evidence. For example, the Motion asserts: "Mr. Cunningham has been on notice of the factual basis for the proposed counterclaim since January 30, 2019, when Performance first advised him of a possible counterclaim." (Mot. at 19:2-5 (citing nothing).) To the contrary, the only counterclaim mentioned in the January 30, 2019, email was that purportedly arising under California Penal Code section 632.7. (Fougner Decl. at ¶ 9 & Ex. B.) (California Penal Code section 637.2 is not a distinct cause of action but rather CIPA's private-right-of-action and statutory-damages provision.)

To take but one more example from among dozens of their evidence-free assertions, SLC contends: "On or about March 25, 2015, Mr. Cunningham filled out an application with Defendants over the phone." In fact, Performance Settlement's illegally-made recording of the call in question reveals that, according to Performance Settlement itself, its subsidiary, and not SLC, participated in that call. (Cunningham Decl. ¶ 20.)

## IV.   **LEGAL STANDARD**

This Court has explained the interplay between Federal Rules of Civil Procedure 15 and 16 when a party seeks to amend a pleading after the deadline in the scheduling order:

> When a party requests leave to amend a pleading more than 21 days after serving the pleading, or more than 21 days after service of a responsive pleading, "the court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts consider five factors in

- 5 -

deciding whether to grant leave: (1) any undue delay in bringing the motion, (2) any evidence that the movant has bad faith or dilatory motive, (3) whether the movant has repeatedly failed to cure deficiencies by previous amendments, (4) prejudice to the opposing party, and (5) futility of amendment. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). The crucial factor is prejudice. *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).

If the party requests leave to amend past the deadline for amending pleadings in the Court's Scheduling Order, the party must also show "good cause." Under Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard, rather than the more liberal amendment policy of Federal Rule of Civil Procedure 15(a), applies to the amendment of pleadings after the deadline. *See In re Western States Wholesale Natural Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013); *see also Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. When evaluating whether a party was diligent, the Ninth

1      Circuit has determined that "the focus of the inquiry is

2      upon the moving party's reasons for modification. If that

3      party was not diligent, the inquiry should end." *Id.* at

4      610.

5  *Ameranth, Inc. v. Genesis Gaming Sols., Inc.*, No. SACV 11-0189 AG (RNBx),

6  2014 U.S. Dist. LEXIS 195025, at *5 (C.D. Cal. Mar. 31, 2014).

## V.    <u>ARGUMENT AND AUTHORITIES</u>

      As a threshold matter, in contravention of the local rules, SLC failed to meet and confer on four of its five proposed counterclaims.

      More importantly, SLC was not diligent in investigating and alleging its purported claims. It procrastinated three months before serving any discovery requests at all. Then, having received sworn responses stating the facts of its purported claims, it dallied another three months before alleging them. Because the deadline to amend pleadings has passed, SLC's lack of diligence ends the inquiry.

      But even if the Court finds that SLC was diligent, it should still deny leave to amend, because amendment would be unfairly prejudicial to Plaintiff. Granting leave would require re-opening discovery so that Plaintiff can obtain written and oral evidence relevant to the elements of the purported counterclaims and the defenses thereto.

      Finally, the Court should decline to exercise supplemental jurisdiction over the call-recording claims, because the questions whether CIPA applies to a (i) non-California (ii) consumer (iii) who relied upon and obeyed the law of his state (iv) while the business with which he was speaking was recording him, and even if so, (v) whether statutory damages should be imposed raise novel and complex questions of state law.

- 7 -

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.**   <u>**On four of its five proposed causes of action, SLC failed to meet and**</u>
<u>**confer, as required by local rule.**</u>

As an initial matter, the Motion should be denied as to the fraud and California Penal Code section 632 claims, because SLC never met and conferred about them. Accordingly, the Court can and should decline to hear the Motion.

With a few exceptions inapplicable here, "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss **thoroughly**, preferably in person, the substance of the contemplated motion and any potential resolution." C.D. Cal. Civ. L.R. 7-3 (emphasis added). "The Court may decline to consider a motion unless it meets the requirements of L.R. 7-3." C.D. Cal. Civ. L.R. 7-4. The Court of Appeals has upheld Local Rule 7-3. *Dragicevich v. J.P. Morgan Chase Bank, N.A.*, 623 F. App'x 312, 312 (9th Cir. 2015).

> Local Rule 7-3 isn't just a piece of petty pedantry put down to trip up lawyers. Nor is Local Rule 7-3 a mere formalism simply there to be checked off by lawyers. No—Local Rule 7-3 instead helps ensure counsel fulfill their obligation "to secure the just, speedy, and inexpensive determination of every action and proceeding," by avoiding unnecessary litigation. Fed. R. Civ. P. 1. Making two sides talk can significantly help focus and clarify disputes, even when one side still has to file a motion at the end of the day. So the Court takes compliance with Rule 7-3 seriously, as it must to fully honor its own obligations under Federal Rule of Civil Procedure 1.

*Lopez v. Wells Fargo Bank, N.A.*, No. SACV 16-1409 AG (KESx), 2016 U.S. Dist. LEXIS 144380, at *12 (C.D. Cal. Oct. 17, 2016).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, SLC's counsel emailed Plaintiff's counsel regarding only <u>one</u> proposed "counterclaim for violations of California Penal Code §§632.7, 637.2 Unlawful Recording of Cellular and Wireless Telephone Calls," and no other purported claims. (Fougner Decl. at ¶ 9 & Ex. B.) Moreover, when counsel met and conferred, they discussed only SLC's purported claim under California Penal Code section 632. (*Id.* at ¶ 10.) SLC doesn't specifically contend otherwise. (*See* Dkt. No. 34-1 at 2-3 ¶ 6.)

Nor does SLC offer any good cause for its failure to meet and confer on these claims, let alone thoroughly. (*See generally* Mot.) Even without more, the Motion should therefore be denied with respect to the fraud and California Penal Code section 632 claims. *Lopez*, 2016 U.S. Dist. LEXIS 144380, at *7 (citing *Superbalife, Int'l v. Powerpay*, No. CV 08-5099, 2008 U.S. Dist. LEXIS 89204, at *5 (C.D. Cal. Oct. 7, 2008)); *cf. Boyack v. Salon Mgmt. Corp.*, No. SACV 18-01233 AG (DFMx), 2019 U.S. Dist. LEXIS 23678, at *7-9 (C.D. Cal. Feb. 11, 2019) (denying leave to add claims beyond those to which the parties stipulated).

**B.**   **<u>SLC has failed to establish good cause. It wasn't diligent.</u>**

In any event, the Motion should be denied in its entirety because SLC was not diligent in asserting its proposed claims.

SLC requested leave after the deadline to amend pleadings. (*Compare* Dkt. No. 25 at 3:7-9 ¶ 3 (December 1, 2018 deadline); *with* Mot. (filed March 21, 2019).) Therefore, it must show good cause, Fed. R. Civ. P. 16(b)(4), i.e., diligence, *Johnson*, 975 F.2d at 610.

SLC hasn't proven its diligence. The only evidence it offers in support of its Motion is the declaration of its outside counsel. (*See* Dkt. No. 34-1.) This declaration reveals that SLC was not diligent. SLC didn't serve discovery requests until three months after the Rule 26(f) conference. (*Compare id.* at 2 ¶ 2; with Dkt. No. 21 at 1:25-2:2.) The declaration offers no justification for the *additional* three

1   months' delay—all well after the deadline to amend pleadings had come and

2   gone—between obtaining the purportedly relevant evidence and filing the Motion.

3   (*See* Dkt. No. 34-1 at 2-3 ¶¶ 3-6.) Nor is the proposed counterclaim the sort of

4   highly technical pleading that would reasonably take three months to draft. (*See*

5   *generally id.* at 5-16, 17-28.)

6       Further, SLC offers no evidence that it could not have discovered the

7   allegedly relevant facts earlier (*See generally* Dkt. No. 34-1 at 1-3.). In fact, SLC

8   offers no evidence that it *did* not discover the allegedly relevant facts earlier. (*See*

9   *generally* Mot.; Dkt. No. 34-1 at 1-3.) For instance, SLC offers no declaration from

10  any SLC employee to the effect that SLC did not know before January 4 or 5,

11  2019, that Plaintiff had recorded calls with it or did not intend to purchase its

12  services.

13      For good reason: SLC did know these facts before. For instance, on

14  December 22, 2018, Plaintiff had served a sworn, objection-free interrogatory

15  response that he had recorded calls with Defendants. (Fougner Decl. at ¶ 8.) At that

16  time, SLC had in its possession at least 16 call recordings, *none* of which included

17  a statement by Plaintiff that he was recording the call. (Cunningham Decl. ¶ 17.)

18  As for the fraud claims, SLC knew long before this case was even filed that

19  Plaintiff had no intention of purchasing its products—hence its decision to finally

20  stop robocalling him on October 4, 2017. (*See* Dkt. No. 37-4.). Indeed, Defendants

21  admit that Plaintiff "abruptly ended" a call all the way back in 2015 (Mot. at 7:11-

22  13.), hardly the rapport expected from a likely customer.

23      In any event, SLC's failure to submit evidence of when it *first* learned of the

24  facts ostensibly undergirding its proposed claims is fatal to its Motion. *Ecojet, Inc.*

25  *v. Luraco, Inc.*, No. SACV 16-00487-AG-KES, 2016 U.S. Dist. LEXIS 187949, at

26  *5 (C.D. Cal. Dec. 13, 2016) ("To establish good cause, Luraco must explain when

27  it **first** learned of the facts that allegedly give rise to the new counterclaims."

28  (emphasis added)).

- 10 -

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

Most charitably, SLC learned of the relevant facts by December 22, 2018, three months before filing its Motion. That is just one month less dillydallying than what the Court found to be undiligent—and even undue delay—in *Ecojet*. *Id.* at *5-6. SLC's failure to prove good cause ends the inquiry. *Johnson*, 975 F.2d at 610.

**C.    Leave should be denied because of undue delay and prejudice.**

As shown above, SLC was not diligent in alleging its counterclaims. Its lack of diligence constitutes undue delay under Federal Rule of Civil Procedure 15(a)(2). Leave should be denied for the additional, independently sufficient reason that Plaintiff would be unfairly prejudiced by having to re-open and redo discovery.

Leave would be futile, too, because even if the facts alleged by SLC are true, it has no cause of action against Plaintiff. But futility arguments are unnecessary to the resolution of the Motion and disfavored at the current posture, *Portney v. CIBA Vision Corp.*, No. SACV 07-854 AG (MLGx), 2008 U.S. Dist. LEXIS 127184, at *7-8 (C.D. Cal. May 15, 2008), so Plaintiff does not raise them here.

1.    Undue delay

SLC exhibited undue delay when it knew or should have known the facts underlying the purported claims. Even if SLC had shown that it *didn't* know the relevant facts when it first answered the complaint—which it has not—that would not be enough. A court inquires "whether the moving party knew *or should have known* the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006) (emphasis added). With respect to the fraud claims, SLC should have known that Plaintiff had no intention of purchasing its products when, after dozens of sales calls (Dkt. No. 37-4.), it had failed to sell him anything and when he, by SLC's lights, abruptly ended calls with it. (Mot. at 7:11-13.) With respect to the call-

- 11 -

recording claims, SLC has been on inquiry notice for years both because SLC was making undisclosed recordings of the very same calls (Cunningham Decl. ¶¶ 20-27.) (thus suggesting to SLC that its counterparty might do the same) and because SLC was making disclosed recordings (*Id.* at ¶ 28-29.) (thus suggesting to SLC that its counterparty might reciprocate its recordation).

### 2.  Prejudice

Plaintiff's complaint pleads three claims for relief: two under the TCPA and a related claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Dkt. No. 1 at 14-17 ¶¶ 61-76.). SLC now asks to add <u>five</u> state-law claims for various permutations of fraud and call recording, the elements of and defenses to which have almost no overlap with the extant claims. (*See* Dkt. No. 34-1 at 11-15 ¶¶ 25-50; *accord id.* at 23-27 ¶¶ 25-50.). If the Court permits SLC to plead these claims, Plaintiff will need to take substantial written and oral discovery on them. But April 5, 2019, was the last day to serve discovery requests. (*Compare* Dkt. No. 25 at 2 ¶ 1.2; *with id.* at 1:15-16.) Therefore, discovery will have to be re-opened and extended by several months.

The elements of Plaintiff's first claim for relief (*See* Dkt. No. 1 ¶¶ 61-65.) are that (1) an ATDS or artificial or prerecorded voice (2) was used to place calls (3) to his number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017) ("Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof."). *But see L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 804 (9th Cir. 2017) (without mentioning *Van Patten*, referencing a pre-*Van Patten* case that had, without extended discussion, listed absence of prior express consent as an element of the claim).

The elements of Plaintiff's second claim for relief (*See* Dkt. No. 1 ¶¶ 66-71.) are that (1) his residential or cellular telephone number (2) was called at least twice in any 12-month period (3) for initiating any telephone solicitation (4) while the caller (i) lacked a do-not-call policy available upon demand or adequate training thereupon or (ii) during the calls, failed to disclose the name of the individual caller, the name of the person or entity on whose behalf the call was being made and/or a telephone number or address at which the person or entity could be contacted. 47 U.S.C. § 227(c); *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018); *Charvat v. NMP, LLC*, 656 F.3d 440, 447-50 (6th Cir. 2011); 47 C.F.R. § 64.1200(c)(2), (d)(1)-(4), (e) (do-not-call regulations also applicable to calls to wireless telephone numbers).

The elements of Plaintiff's third claim for relief (*See* Dkt. No. 1 ¶¶ 72-76.), as pleaded, are that Defendants violated the TCPA, thereby costing Plaintiff money or property. *Connor v. Lyft, Inc.*, No. 16-cv-00351-JSW, 2016 U.S. Dist. LEXIS 153705, at *14-15 (N.D. Cal. Apr. 14, 2016); Cal. Bus. & Prof. Code § 17204.

The elements of SLC's first proposed counterclaim, for common-law fraud (*See* Dkt. No. 34-1 at 11-12 ¶¶ 25-29; *accord id.* at 23-24 ¶¶ 25-29.), are (1) misrepresentation (2) scienter; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente Med. Grp., Inc.*, 938 P.2d 903, 917 (Cal. 1997).

The elements of SLC's second proposed counterclaim, fraud by non-disclosure (*See* Dkt. No. 34-1 at 12-13 ¶¶ 30-35; *accord id.* at 24-25 ¶¶ 30-35.), are (1) non-disclosure; (2) scienter; (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Engalla*, 938 P.2d at 917. No cause of action will lie unless a fiduciary or other duty to disclose exists. *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. App. 4th 1997).

The elements of SLC's third proposed counterclaim, intentional misrepresentation (*See* Dkt. No. 34-1 at 13-14 ¶¶ 36-43; *accord id.* at 25-26 ¶¶ 36-

- 13 -

43.), are the same as the elements of SLC's first proposed counterclaim. *Engalla*, 938 P.2d at 917.

The elements of SLC's fourth proposed counterclaim, eavesdropping on confidential communications (*See* Dkt. No. 34-1 at 14 ¶¶ 44-47; *accord id.* at 26 ¶¶ 44-47.), are the (1) nonconsensual (2) recording (3) of a confidential communication. Cal. Penal Code § 632. For a call to be a confidential communication, there must be an objectively reasonable expectation that the conversation is not recorded. *Flanagan v. Flanagan*, 41 P.3d 575, 576-77 (Cal. 2002).

The elements of SLC's fifth proposed counterclaim, eavesdropping on wireless communications (*See* Dkt. No. 34-1 at 15 ¶¶ 48-50; *accord id.* at 27 ¶¶ 48-50.), are the (1) nonconsensual (2) recording (3) of a wireless communication. Cal. Penal Code § 632.7.

Comparison of the proposed claims to the existing ones reveals wide swaths of new discovery that will need to be taken. For example, on the fraud claims, Plaintiff will need to depose those SLC employees who spoke with him regarding whether and how they relied on anything he told them. Plaintiff will also need to investigate through written and oral discovery the practices regarding SLC's processing of information received from targets of its unsolicited telemarketing to determine whether any such reliance was justifiable. Further, Plaintiff will need to obtain financial records, including employment agreements and payroll ledgers, to investigate SLC's theory that it incurred compensation expenses as resulting damage. (*See* Dkt. No. 34-1 at 13-14 ¶ 42; *accord id.* at 25-26 ¶ 42.)

Extensive new discovery will be required on the CIPA claims, too. For one, the claims are time-barred. The statute of limitations is one year. *Ramos v. Capital One, N.A.*, No. 17-cv-00435-BLF, 2017 U.S. Dist. LEXIS 118162, at *23 (N.D. Cal. July 27, 2017); *see also Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-03333-SI, 2018 U.S. Dist. LEXIS 193485, at *7 (N.D. Cal. Nov. 13, 2018)

- 14 -

(facially time-barred CIPA claimant must meet state-law pleading requirements for tolling). The alleged recordings were made in 2017[3] and before. (Dkt. No. 34-1 at 6-10 ¶¶ 6-17; *accord id.* at 18-22 ¶¶ 6-17.) Therefore, SLC will have to prove that it had no reason to suspect Plaintiff recorded the calls, thereby justifying tolling of the statute of limitations. *Ramos*, 2017 U.S. Dist. LEXIS 118162, at *23. Plaintiff's investigation into tolling will require written and oral discovery from SLC and its past and present employees.

In the rare instance that an entity—as opposed to a natural person—contends that its privacy has been violated under CIPA, the investigation into its knowledge is particularly exhaustive. That is so in part because the inquiry canvasses all of the entity's representatives who spoke with the recording party. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, No. 12-cv-01685-BAS(JLB), 2016 U.S. Dist. LEXIS 125820, at *10-12 (S.D. Cal. Sep. 15, 2016) ("Consent is dependent on all the factors leading up to the telephone call, and NEI cannot avoid this by attempting to limit all testimony to one single telephone call. Because it has failed to prove a lack of consent, its claim under CIPA must fail."). Here, at least 12 different purported SLC employees spoke with Plaintiff. (Dkt. No. 37-4.) Because SLC's own founder and CEO claims to have no clue who most of these people are (Dkt. No. 37-7 at 71:10-74:23.) despite the fact that SLC is a small company (*Id.* at 69:1-4.), substantial first- and third-party discovery will be entailed in tracking them down and obtaining the relevant written and oral discovery from them.

This manifest "'need to reopen discovery and therefore delay the proceedings' would supply strong support for a finding of prejudice." *Ameranth*, 2014 U.S. Dist. LEXIS 195025, at *5 (quoting *Lockheed Martin Corp. v. Network*

---

[3] One call is alleged as late as May 22, 2018. (Dkt. No. 34-1 at 9 ¶ 17; *accord id.* at 21 ¶ 17.) This is apparently a clerical error; Plaintiff and one or more of Defendants spoke on May 22, *2017*. (Dkt. No. 37-4 at 1.)

- 15 -

1    *Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999)); *accord Solomon v. N. Am. Life*

2    *& Cas. Ins. Co.*, 151 F.3d 1132, 1138-39 (9th Cir. 1998). In *Ameranth*, the

3    defendants sought leave to add a single affirmative defense, and discovery was not

4    set to close until seven months after the Court's ruling. *Ameranth*, 2014 U.S. Dist.

5    LEXIS 195025, at *2-3, 5. Accordingly, the Court did "not believe that is

6    sufficient prejudice to deny the Motion." *Id.* at *6. Here, by contrast, the deadline

7    to serve discovery requests has already passed (*Compare* Dkt. No. 25 at 2 ¶ 1.2;

8    *with id.* at 1:15-16.), discovery closes just three weeks after the *hearing* on the

9    Motion (*Id.* at 1:15-16.) (to say nothing of the date on which the Court may rule on

10   the Motion), and yet SLC seeks leave to plead five entirely new claims for relief.

11   As this Court's and the Ninth Circuit's precedents illuminate, that is unfair to

12   Plaintiff.

13        The obstructionism that SLC's CEO, Mr. Crenshaw, exhibited in his

14   deposition would make it particularly prejudicial for Plaintiff to have to slog

15   through a brand-new round of discovery on new issues for which written and oral

16   evidence will be required from Mr. Crenshaw and his past and present employees.

17   It was like pulling teeth to get him to answer the most basic and undisputedly

18   relevant questions about himself and his business. (*Compare* Dkt. No. 37 at 5:1-

19   11:26 (Plaintiff alleges as much); *with id.* at 12:25-13:21 (Defendants fail to deny

20   as much).) Given the glacial pace at which Mr. Crenshaw provided information

21   during his first deposition (*See generally* Dkt. No. 37-7), Plaintiff would seek leave

22   of the Court to depose Mr. Crenshaw for more than seven hours, a briefing (and

23   deposition) process that would burden the Court, the parties and their counsel.

24        Justice delayed is justice denied. Rule 1 exists, and is the first rule, for a

25   reason.

26

27

28

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

**D.** **The Court should decline to exercise supplemental jurisdiction over the call-recording claims because they raise novel and complex questions of state law.**

According to SLC, its proposed counterclaim is permissive. (Mot. at 16:18-21.) The only subject matter jurisdiction that SLC alleges is supplemental jurisdiction. (*See* Mot. at 10-19.) District courts may decline to exercise supplemental jurisdiction over a claim that raises a novel or complex issue of state law. 28 U.S.C. § 1367(c)(1).

Here, whether California's call-recording statute applies to an individual consumer in a one-party consent state speaking with a business that is illegally telemarketing to him and is itself recording the calls (usually in secret), and whether under those facts the business was on inquiry notice of the consumer's recordation, thereby causing the statute of limitations to run, are novel and complex questions of state law. Therefore, the Court should decline to exercise supplemental jurisdiction over the CIPA claims.

SLC is a California-based business. (*Compare* Dkt. No. 1 ¶ 3; *with* Dkt. No. 18 ¶ 3.) Accordingly, it is subject to CIPA. Cal. Penal Code §§ 632, 632.7; *Kearney v. Salomon Smith Barney, Inc.*, 137 P.3d 914, 917 (Cal. 2006). SLC records all of its calls. (Cunningham Decl. ¶¶ 28-29.) On most of these calls, SLC fails completely to disclose the recordation (*Id.* at ¶¶ 20-27.), even if the consumer's confidential information is discussed (*Id.*) and/or the consumer is on a wireless telephone (*Id.* at ¶¶ 6, 20-27.). Thus, SLC commits thousands, if not millions, of CIPA violations—including against Plaintiff—as part of its regular business practices. Cal. Penal Code §§ 632, 632.7. Even on those rare calls on which SLC does disclose that it is recording, it fails to do so upfront (Cunningham Decl. ¶¶ 28-29.), violating CIPA. *Raffin v. Medicredit, Inc.*, No. CV 15-4912-GHK (PJWx), 2017 U.S. Dist. LEXIS 5311, at *28 (C.D. Cal. Jan. 3, 2017) (no statement by the consumer—not even his name—may be recorded by the business without the consumer's consent). Moreover, SLC lies about its identity

- 17 -

1   (Cunningham Decl. ¶¶ 28-29.), so even if a consumer had a sufficiently heroic
2   memory to recall days, weeks or months later than SLC records its calls, he would
3   not necessarily know that a given call was with SLC in the first place.

4       Plaintiff, for his part, lives in Texas. (Dkt. No. 34-1 at 6 ¶ 2; *accord id.* at 18
5   ¶ 2.) He was not in California during the alleged recording. (Cunningham Decl. ¶¶
6   10-12.) In Texas, Plaintiff's recording his calls was legal. Tex. Penal Code § 16.02;
7   *Zephyr v. Saxon Mortg. Servs.*, 873 F. Supp. 2d 1223, 1229 (E.D. Cal. 2012).
8   Accordingly, whether Plaintiff was subject to California's, rather than Texas's,
9   call-recording statute is a question of choice of law. Answering it turns out to be
10  complex.

11      In *Kearney*, the California Supreme Court considered whether "a large,
12  nationwide brokerage firm that has numerous offices and does extensive business
13  in California" was subject to CIPA when speaking with California consumers.
14  *Kearney*, 137 P.3d at 917. The defendant was in a one-party consent state, Georgia,
15  which allowed undisclosed recording by a party to the call. *Id.* To determine
16  whether Georgia or California law applied, the California Supreme Court
17  undertook an exhaustive choice-of-law analysis. Its inquiry focused heavily on the
18  identity of the parties: the fact that the recording party was a business whereas the
19  recorded party was a consumer. Thus, the court expressed concern that failing to
20  apply the California statute to the Georgia business "potentially would place local
21  California businesses (that would continue to be subject to California's protective
22  privacy law) at an unfair competitive disadvantage vis-à-vis their out-of-state
23  counterparts." *Id.*  It made clear that its holding "will affect only those business
24  telephone calls in Georgia that are made to or are received from California clients."
25  *Id.*  It analyzed federalism concerns, noting that "a company that conducts business
26  in numerous states ordinarily is required to make itself aware of and comply with
27  the law of a state in which it chooses to do business." *Id.* at 920. It reviewed
28  CIPA's legislative history and statutory language, focusing on natural persons'

1    individual rights of privacy. *Id.* ("protect the right of privacy of the people of this

2    state"). It considered sister statutes and a provision of the California Constitution

3    focused on "protection of California consumers' privacy in the face of a perceived

4    escalation in the impingement upon privacy interests caused by various business

5    practices." *Id.* at 935. It noted that businesses have the customer records and

6    technical tools to know whether a given phone number is in California or not. *Id.* at

7    936. In view of all these considerations and the specific facts of the case, it found

8    that the nationwide firm had violated CIPA by secretly recording California

9    consumers.

10        *Kearney*, therefore, leaves it far from clear that Plaintiff was subject to CIPA

11    while speaking on the phone in Texas. If anything, *Kearney* suggests he was not.

12    Plaintiff was never acting on behalf of a business during any of the alleged

13    recording. (*Id.* at ¶ 9.) The parties never discussed SLC's confidential information

14    during any of the alleged recording. (Cunningham Decl. ¶ 18.) SLC was never on a

15    cellular telephone during any of the alleged recording. (*See generally* Dkt. No. 34-

16    1 (failing to allege that it was).) *Kearney* expressly reserved the question of

17    whether CIPA binds a consumer such as Plaintiff, let alone when—as here

18    (Cunningham Decl. ¶ 19.)—investigating wrongful conduct by the other party to

19    the call. *Kearney*, 137 P.3d at 939 n.18. These are the sort of circumstances under

20    which the Ninth Circuit has endorsed district courts' declining to exercise

21    supplemental jurisdiction. *E.g.*, *Wash. State Republican Party v. Wash. State*

22    *Grange*, 676 F.3d 784, 797 (9th Cir. 2012) (state constitutional law best decided by

23    state courts).

24        Moreover, even if Plaintiff were subject to CIPA, in the absence of clear,

25    pre-existing binding precedent to that effect, the California Supreme Court would

26    likely rule that he is not liable for statutory damages for any violations predating its

27    ruling on the question. In *Kearney*, its choice-of-law analysis led to that conclusion

28    even when the recording party was a nationwide firm with ample legal and

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR

1    financial resources. *Id.* at 918. *A fortiori*, the California Supreme Court would

2    probably not impose retroactive liability on an out-of-state consumer reasonably

3    relying on and complying with his state's laws. In any event, given the court's

4    nuanced approach in *Kearney*, it is difficult to divine how it might resolve all of

5    the foregoing questions.

6            Accordingly, the Court should decline to exercise supplemental jurisdiction

7    over the CIPA claims.

8                            **VI.    SUMMARY**

9            Each "x" in the table below represents an independently sufficient basis for

10   denying leave to add SLC's proposed claims:

| | **Fraud Claims** | **Cal. Penal Code § 632** | **Cal. Penal Code § 632.7** |
|---|---|---|---|
| **C.D. Cal. Civ. L.R. 7.3** | x | x | |
| **Fed. R. Civ. P. 16(b)(4)** | x | x | x |
| **Fed. R. Civ. P. 15(a)(2)** | | | |
| Undue Delay | x | x | x |
| Prejudice | x | x | x |
| **28 U.S.C. § 1367(c)(1)** | | x | x |

20           RESPECTFULLY SUBMITTED AND DATED on April 8, 2019.

22                        By:    s/ Jon Fougner
23                               E-mail: Jon@FougnerLaw.com

24                               ***Attorney for Plaintiff Craig Cunningham***

OPP'N MOT. DEF. PERFORMANCE SLC, LLC LEAVE FILE SUPP'L PLEADING
*Cunningham v. Performance SLC LLC*, Case No. 8:18-cv-01093-AG-AGR