Jeremy Branch (State Bar No. 303240)
The Law Offices of Jeffrey Lohman, P.C.
4740 Green River Rd., Suite 310
Corona, CA 92880
(866) 329-9217 ext. 1009
JeremyB@jlohman.com
Attorney for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT CALIFORNIA
## CENTRAL DISTRICT

| | |
|---|---|
| CRAIG CUNNINGHAM,<br><br>Plaintiff,<br><br>vs.<br><br>PERFORMANCE SLC LLC,<br>PERFORMANCE SETTLEMENT LLC,<br>DANIEL J. CRENSHAW<br><br>Defendant | Case No.: 8:18-cv-01093-AG-AGR<br><br>Honorable Andrew Guilford<br><br>Magistrate Judge Honorable Alicia G. Rosenburg<br><br>DEFENDANTS MEMORANDUM OF CONTENTIONS OF FACTS AND LAW |

Pursuant to Local Rule 16-4, defendants, PERFORMANCE SLC LLC,

PERFORMANCE SETTLEMENT LLC, and DANIEL J. CRENSHAW submit the

following Memorandum of Contentions of Law and Fact.

**DEFENDANTS MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

**LR 16-4.1 CLAIMS AND DEFENSES**

   **A. <u>Summary of Claims</u>**

   **Claim 1: Violations of 47 U.S.C. 227(b)**: Plaintiff alleges that Defendants called him on his cell phone using an Automatic Telephone Dialing System ("ATDS") without his prior express consent.

   **Claim 2: Violations of 47 U.S.C. 227 (c)**: Plaintiff Alleges that he asked for Defendants written do-not-call list and was not provided one.

   **Claim 3: California's Business and Professions Code 17200**: Plaintiff alleges that Defendants actions in violating the TCPA also constitute violations of California's Unfair Competition Law.

   **B. <u>Elements Required to Establish Plaintiff's Claim</u>**

**Elements Required to Establish Claim 1**

1. Defendant called a cellular telephone number;

2. using an automatic telephone dialing system;

3. without the recipient's prior express consent.

See <u>Meyer v. Portfolio Recovery Assocs., LLC</u>, 707 F.3d 1036, 1043 (9th Cir. 2012).

**Elements Required to Establish Claim 2**

1. Plaintiff must prove that he has received more than one telephone call within any 12 month period by or on behalf of the same entity

2.  In violation of any section of 47 U.S.C. 227, Or

3.  Telephone solicitations to residential telephones who's subscriber has registered his telephone number on the national do-not-call registry.

See Heidorn v. BDD Mktg. & Mfg. Co., LLC, No. C-13-00229 JCS, 2013 WL 6571629, at *10 (N.D. Cal. Aug. 19, 2013); Drew v. Lexington Consumer Advocacy, LLC, No. 16-CV-00200-LB, 2016 WL 1559717, at *6 (N.D. Cal. Apr. 18, 2016).

### Elements Required to Establish Claim 3

1.  Plaintiffs must establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

2.  Show that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.

See Holt v. Facebook, Inc., 240 F. Supp. 3d 1021, 1035 (N.D. Cal. 2017).

### C. Key Evidence in Opposition to Each Claim

### Claim 1: No ATDS was used

The testimony of Defendants will show that only two types of calls were placed to Defendant. In the first type of call, an agent sees a screen with a link to press of Plaintiff's telephone number. If the agent chooses, and only if the agent chooses, the agent may click the link and the telephone system will dial the number. The second type of call made to Plaintiff by Defendant is a pure manual dial. That is, the agent picks up the handset and dials the keypad with his or her fingers. Defendants will

testify that no other type of call was made. Defendants will testify that the calling system used by Defendants to contact Plaintiff was not programed or set up to make any other type of call. Plaintiff has not designated an expert to suggest any different type of call was made, or that the calling system used by Defendants was capable of any other types of calls at the time the calls were placed.

## Claim 1: Prior Express Consent

Even if the type of calling described above are considered calls with an ATDS, although no precedent in the Ninth Circuit suggests such, the calls at issue were made with the prior express consent of Plaintiff. On April 28, 2015, Plaintiff filled out an application with Defendant Performance SLC, LLC, in which he provided the cell phone number at issue (Exhibit 212). All calls subsequent to this were made with Plaintiff's prior express consent because he provided his express consent when he filled out the application.

## Claim 2: No ATDS was Used and Plaintiff's Number is not on the National Do not Call Registry.

As discussed above, Defendants did not use an ATDS to make any of the calls at issue. Furthermore, Plaintiff will testify that his number is not on the National Do Not Call Registry. Since an ATDS was not used, Plaintiff cannot prove this claim. Furthermore, because his number is not on the National Do-Not-Call registry, he also cannot prove Claim 2.

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

**Claim 3: Plaintiff's TCPA claim fails and He is not Charged for the Calls at Issue**

Plaintiff's TCPA claim fails because he cannot show that an ATDS was used to make the calls at issue. Furthermore, even if Plaintiff could show that the calls at issue were made with an ATDS, he will testify that he pays a flat rate for each call to his cell phone. He does not have standing to bring this claim because he has not suffered any economic harm.

### D. <u>Affirmative Defenses</u>

Defendants have pleaded the following affirmative Defenses (Dkt. No. 18)

    1.   <u>Failure to state a claim</u>

Plaintiff has failed to state a claim for which relief may be sought. He does not have any evidence that an ATDS was used and therefore, failed to state a claim for any of his alleged claims.

    2.   <u>Prior express consent</u>

Plaintiff provided Defendants with the number at issue when he filled out an application with defendants on April 28, 2015 (Exhibit 212).

    3.   <u>Waiver, estoppel and unclean hands</u>

Plaintiff has unclean hands, in that he does not come to the litigation with clean hands. He has admitted to lying to Defendants about his interest in pursuing their services and did so repeatedly.

4.   <u>Unjust enrichment</u>

Plaintiff wishes to be enriched by $1,500 a call for calls that he not only invited, but that he did his best to encourage, he should not gain for statutory violations he himself provoked.

5.   <u>Failure to mitigate</u>

But for his lies to Defendant, Plaintiff would not have a claim for any statutory damages. He never instructed Defendants not to call him, which would have ended the calls, he continually encouraged them.

6.   <u>Any violation was not a Willful or Knowing Violation</u>

As noted, Plaintiff continually told Defendants he was interested in its services and that he wanted to hire them. There is no showing that there was any intent on the part of Defendants to violate the TCPA. Furthermore, the way in which Defendants made the calls at issue, manually dialing the number, was not known to be a violation of the TCPA and therefore, they could not have willfully or knowingly violated the TCPA.

7.   <u>Plaintiff was not charge for calls</u>

Since Plaintiff was not charged for the calls at issue, his claim for UCL fails as he has not suffered any economic harm.

8.    <u>Contribution</u>

Plaintiff alleges that 117 calls came from Defendants. However, Defendants call logs show significantly less calls to the number at issue, 49 (Exhibit 203). If Plaintiff actually received these calls, they did not come from Defendants.

9.    <u>Plaintiff Has Not Suffered Injury</u>

Plaintiff cannot show that he suffered damage as a result of the alleged calls.

10.    <u>Plaintiff Lacks Standing to Bring his Claims</u>

Plaintiff has not suffered any concrete harm because not only did he encourage the calls, but he was not charged for them.

11.    <u>Intervening cause</u>

Plaintiff alleges that 117 calls came from Defendants. However, Defendants call logs show significantly less calls to the number at issue, 49 (Exhibit 203). If Plaintiff actually received these calls, they did not come from Defendants.

12.    <u>Reasonable practices</u>

Defendants have always conducted their business within the industry standards used for companies in this location operating similar business.

13.    <u>Unknown Defenses</u>

Defendants reserved the right to add affirmative defenses if such defenses became known to them throughout this lawsuit. Defendants now pleads the affirmative Defense of Statute of Limitations

<u>Statute of Limitations</u>

Plaintiff's complaint only alleges violations starting on March 24, 2017. There was no reason for Defendants to believe that Plaintiff intended to allege violations before March 24, 2017. The allegations starting on March 24, 2017, are not time barred. However, during pretrial conference meeting between the parties on July 11, 2019, Plaintiff told Defendants he would be alleging violations from as early as April, 2015. This was news to Plaintiffs. On April 26, 2019, Plaintiff sent an email to Defendants stating that, unless they stipulate to allow Plaintiff the ability to include time barred calls, they would file a separate lawsuit alleging violations of the calls before March 24, 2017. Defendants did not so stipulate, and nothing was ever filed alleging the time-barred calls at issue as violations of the TCPA. Now that Plaintiff has made known his intent to bring time barred allegations against Defendants, they now include such an affirmative defense.

**E. <u>Elements of Affirmative Defenses</u>**

1. <u>Failure to state a claim</u>

As noted above, Plaintiff has failed to state a claim for which relief may be sought. He does not have any evidence that an ATDS was used and therefore, failed to state a claim for any of his alleged claims. In order to state a claim for violations of the TCPA, Plaintiff must that the calls at issue were made by a device that has 1)the

capacity 2) to dial stored numbers 3) automatically <u>Marks v. Crunch San Diego, LLC</u>, 904 F.3d 1041 (9th Cir. 2018)

    2.   <u>Prior express consent</u>

Plaintiff provided Defendants with the number at issue when he filled out an application with defendants on April 28, 2015.

It has long been held in this circuit, by the FCC, and by district courts across the country that, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." <u>In re rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991</u>, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992).

In accordance with the 1992 FCC Order supra, the vast majority of cases to address the issue of consent have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party. <u>See, e.g., Van Patten</u>, 22 F.Supp.3d at 1073–77; <u>Baird v. Sabre Inc.</u>, 995 F.Supp.2d 1100, 1106 (C.D.Cal.2014); <u>Emanuel v. L.A. Lakers, Inc.</u>, No. CV 12–9936–GW(SHx), 2013 WL 1719035 (C.D.Cal. Apr. 18, 2013); <u>Roberts v. PayPal, Inc.</u>, No. C 12–0622 PJH, 2013 WL 2384242 (N.D.Cal. May 30, 2013); <u>Olney v. Job.com, Inc.</u>, No. 1:12–CV–01724–LJO, 2014 WL 1747674, at *5 (E.D.Cal. May 1, 2014); <u>Pinkard v. Wal–Mart</u>, No. 3:12–cv–02902–CLS, 2012 WL 5511039, at *2 (N.D.Ala. Nov. 9, 2012); <u>Murphy v. DCI Biologicals Orlando, LLC</u>, No. 6:12–cv–1459–Orl–36KRS,

2013 WL 6865772 (M.D.Fla. Dec. 31, 2013); Steinhoff v. Star Media Co., LLC, No. 13–cv–1750 (SRN/JSM), 2014 WL 1207804 (D.Minn. Mar. 24, 2014); Andersen v. Harris & Harris, No. 13–CV–867–JPS, 2014 WL 1600575 (E.D.Wis. Apr. 21, 2014).

### 3.   Unclean hands

Plaintiff has unclean hands, in that he does not come to the litigation with clean hands. He has admitted to lying to Defendants about his interest in pursuing their services and did so repeatedly.

The "Defense of unclean hands arises from the maxim, 'He who comes into Equity must come with clean hands.'" Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App. 4th 970, 90 Cal. Rptr. 2d 743 (1999), as modified on denial of reh'g (Jan. 3, 2000). Although Unclean Hands is an equitable defense, it is also applied in the court of law. "Defense of unclean hands is available in legal as well as equitable actions. Id." At the heart of the Unclean Hands defense is "Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to invoke the doctrine of unclean hands." Id." The court in Kendall-Jackson laid out a three part test to determine if a plaintiff is coming to the action with Unclean Hands. "Whether the particular misconduct is a bar to the alleged claim for relief depends on (1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the misconduct to the claimed injuries. Id." All three elements are present in this matter.

### 4.   Unjust enrichment

As shown above, Plaintiff has unclean hands in bringing this lawsuit. "The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another. <u>Peterson v. Cellco P'ship</u>, 164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008). Plaintiff wishes to be enriched by $1,500 a call for calls that he not only invited, but that he did his best to encourage, he should not gain for statutory violations he himself provoked.

### 5.   Failure to mitigate

As noted above, but for his lies to Defendant, Plaintiff would not have a claim for any statutory damages. He never instructed Defendants not to call him, which would have ended the calls, he continually encouraged them, and failed to mitigate that damage, by encouraging it.

### 6.   Any violation was not a Willful or Knowing Violation

Neither the TCPA nor the FCC define the phrase "willfully or knowingly." <u>See Sengenberger v. Credit Control Servs., Inc.</u>, No. 09C2796, 2010 WL 1791270, (N.D. Ill. May 5, 2010), at *6. In this absence, courts have put forth a variety of standards interpreting the statutory text. <u>See, e.g., Lary v. Trinity Physician Fin. & Ins. Servs.</u>, 780 F.3d 1101, 1107 (11th Cir.2015) ("The requirement of 'willful or knowing' conduct requires the violator to know he was performing the conduct that violates the statute."); <u>Trindade v. Reach Media Grp., LLC</u>, No. 5:12–CV–04759–PSG, 2014 WL

3572132, at *5 (N.D.Cal. July 18, 2014) ("Some courts have held that a defendant must know that the making of the call violates the TCPA, while others have held that a defendant need only know that the call is being made."). The Court in Haysbert v. Navient Sols., Inc., No. CV 15-4144 PSG (EX), 2016 WL 890297, at *10 (C.D. Cal. Mar. 8, 2016) agreed with those that have held the statute requires a defendant to intend or know that it was performing each of the elements of a TCPA claim (i.e. that it was making a call, to a person who did not provide prior express consent, using an automated system). See Lary, 780 F.3d at 1107; Olney v. Progressive Cas. Ins. Co., 993 F.Supp.2d 1220, 1227 (S.D.Cal.2014).

### 7.    Plaintiff was not Charged for Calls

Plaintiff was not charged for the calls at issue, and he will testify as such. Therefore, his claim for UCL fails as he has not suffered any economic harm. "Under California law, recipient of text messages from gym did not suffer any injury from text messages, and thus lacked standing to pursue unfair practices claim against gym, since recipient had unlimited texting plan, such that he was not charged individually for text messages at issue Van Patten v. Vertical Fitness Grp., LLC, 22 F. Supp. 3d 1069 (S.D. Cal. 2014), aff'd, 847 F.3d 1037 (9th Cir. 2017)

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

8.    <u>Contribution</u>

As noted above, Plaintiff alleges that 117 calls came from Defendants. However, Defendants call logs show significantly less calls to the number at issue, 49 (Exhibit 203). If Plaintiff actually received these calls, they did not come from Defendants.

9.    <u>Plaintiff Has Not Suffered Injury</u>

The United States Supreme Court has held that "even in the context of a statutory violation," such as a violation of the TCPA, an injury must be "concrete" -- i.e., a litigant cannot "automatically" recover merely because "a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1549 (2016).

10.    <u>Plaintiff Does Not Have Standing to Bring his Claims</u>

Applying <u>Spokeo</u>'s concrete injury requirement in the TCPA context, it has been held that a litigant who takes affirmative steps to provoke or encourage violations does not suffer any concrete, or actual, injury and therefore cannot recover. See <u>Stoops v. Wells Fargo Bank, N.A.</u>, 197 F. Supp. 3d 782, 797-99 (E.D. Pa. 2016) ("Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not 'among the sorts of interests [the TCPA was] specifically designed to protect.'").

11.   <u>Intervening cause</u>

Plaintiff alleges that 117 calls came from Defendants. However, Defendants call logs show significantly less calls to the number at issue, 49 (Exhibit 203). If Plaintiff actually received these calls, they did not come from Defendants.

12.   <u>Reasonable practices</u>

Defendants have always conducted their business within the industry standards used for companies in this location operating similar business. As such, if any violations did occur, they were done with procedures in place to avoid such violations. Defendants will make a showing that such violations could not have been willful or knowing, as discussed above.

13.   <u>Statute of Limitations</u>

As Noted above and in its Answer to compliant (Dkt. 18), Defendants reserved the right to supplement additional affirmative defenses as they become known to Defendants. Defendants were not aware of Plaintiff's intent to claim time-barred violations until July 11, 2019. Therefore, Defendants will argue that any violation occurring after the allegations in the complaint, March 24, 2017, are time barred by the statute of limitations.  "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C.A. § 1658 (West). Any new allegation that allegedly occurred four years before Defendants

were on notice that such allegations existed, are time bared and should not be allowed to be heard.

**F. Description of Key Evidence Relied on for Affirmative Defenses**

1.   Failure to state a claim

As noted above, Plaintiff has failed to state a claim for which relief may be sought. He does not have any evidence that an ATDS was used and therefore, failed to state a claim for any of his alleged claims. In order to state a claim for violations of the TCPA, Plaintiff must that the calls at issue were made by a device that has 1)the capacity 2) to dial stored numbers 3) automatically Marks v. Crunch San Diego, LLC, 904 F.3d 1041 (9th Cir. 2018), something he cannot do as the calls were not made in an automatic fashion, but with humans manually making the call, either by clicking on a link to make the call, or manually dialing each number to call.

2.   Prior express consent

Plaintiff provided Defendants with the number at issue when he filled out an application with defendants on April 28, 2015.

There is no dispute between the parties that Plaintiff gave SLC the cell phone number at issue when filling out an application with SLC for its services over the phone (Exhibit 212). While Cunningham's purpose in gratuitously giving his phone number to SLC may have been to set up a lawsuit, the practical effect was he gave SLC permission to call him. It has long been held in this circuit, by the FCC, and by

district courts across the country that, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." <u>In re rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991</u>, 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992).

In accordance with the 1992 FCC Order supra, the vast majority of cases to address the issue of consent have held that a telephone customer who provides her number to another party consents to receive calls or texts from that party. <u>See, e.g., Van Patten</u>, 22 F.Supp.3d at 1073–77; <u>Baird v. Sabre Inc.</u>, 995 F.Supp.2d 1100, 1106 (C.D.Cal.2014); <u>Emanuel v. L.A. Lakers, Inc.</u>, No. CV 12–9936–GW(SHx), 2013 WL 1719035 (C.D.Cal. Apr. 18, 2013); <u>Roberts v. PayPal, Inc</u>., No. C 12–0622 PJH, 2013 WL 2384242 (N.D.Cal. May 30, 2013); <u>Olney v. Job.com, Inc</u>., No. 1:12–CV–01724–LJO, 2014 WL 1747674, at *5 (E.D.Cal. May 1, 2014); <u>Pinkard v. Wal–Mart</u>, No. 3:12–cv–02902–CLS, 2012 WL 5511039, at *2 (N.D.Ala. Nov. 9, 2012); <u>Murphy v. DCI Biologicals Orlando, LLC</u>, No. 6:12–cv–1459–Orl–36KRS, 2013 WL 6865772 (M.D.Fla. Dec. 31, 2013); <u>Steinhoff v. Star Media Co., LLC</u>, No. 13–cv–1750 (SRN/JSM), 2014 WL 1207804 (D.Minn. Mar. 24, 2014); <u>Andersen v. Harris & Harris</u>, No. 13–CV–867–JPS, 2014 WL 1600575 (E.D.Wis. Apr. 21, 2014).

The Ninth Circuit in <u>Van Patten</u> made it clear that express consent is established by providing a cell phone number on an application. "There is no dispute here that Van

Patten never actually said to Vertical Fitness, 'Yes, you may text me at the number I have given you,' or anything like that. He never signed his name or initialed next to a disclaimer that by providing his phone number to Vertical Fitness he was welcoming text messages. As the Court said above, when Van Patten joined the Gold's Gym, the subject of text messages never came up. (Berggren Dep. at 69:12–15; 70:7–9.) Van Patten simply provided his phone number on an application card with no discussion of why Gold's Gym needed it or what they would do with it." Van Patten v. Vertical Fitness Grp., LLC, 22 F. Supp. 3d 1069, 1073 (S.D. Cal. 2014), aff'd, 847 F.3d 1037 (9th Cir. 2017).

      3.   Unclean hands

Plaintiff has unclean hands, in that he does not come to the litigation with clean hands. He has admitted to lying to Defendants about his interest in pursuing their services and did so repeatedly.

      The "Defense of unclean hands arises from the maxim, 'He who comes into Equity must come with clean hands.'" Kendall-Jackson Winery, Ltd. v. Superior Court, 76 Cal. App. 4th 970, 90 Cal. Rptr. 2d 743 (1999), as modified on denial of reh'g (Jan. 3, 2000). Although Unclean Hands is an equitable defense, it is also applied in the court of law. "Defense of unclean hands is available in legal as well as equitable actions. Id." At the heart of the Unclean Hands defense is "Any conduct that violates conscience, or good faith, or other equitable standards of conduct is sufficient cause to

invoke the doctrine of unclean hands." <u>Id.</u>" The court in <u>Kendall-Jackson</u> laid out a

three part test to determine if a plaintiff is coming to the action with Unclean Hands.

"Whether the particular misconduct is a bar to the alleged claim for relief depends on

(1) analogous case law, (2) the nature of the misconduct, and (3) the relationship of the

misconduct to the claimed injuries. <u>Id.</u>" All three elements are present in this matter.

Analogous Case Law

Relevant to Cunningham, the United States Supreme Court has held that "even

in the context of a statutory violation," such as a violation of the TCPA, an injury must

be "concrete" -- i.e., a litigant cannot "automatically" recover merely because "a

statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate

that right." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1549 (2016). Pursuant to <u>Spokeo</u>,

Cunningham cannot maintain his TCPA claim against Defendants unless he has

suffered some concrete injury or actual harm as a result of each and every allegedly

violative call at issue. <u>Id</u>. at 1547.

Applying <u>Spokeo</u>'s concrete injury requirement in the TCPA context, it has been

held that a litigant who takes affirmative steps to provoke or encourage violations does

not suffer any concrete, or actual, injury and therefore cannot recover. See <u>Stoops v.</u>

<u>Wells Fargo Bank, N.A.,</u> 197 F. Supp. 3d 782, 797-99 (E.D. Pa. 2016) ("Plaintiff's

interests, which include purchasing cell phones with the hope of receiving calls from

creditors for the sole purpose of collecting statutory damages, are not 'among the sorts

of interests [the TCPA was] specifically designed to protect.'"); <u>Clapper v. Amnesty Int'l USA</u>, 133 S. Ct. 1138, 1143, 1151, 185 L. Ed. 2d 264 (2013) (finding that "Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing--because the harm respondents seek to avoid is not certainly impending" and holding that "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); <u>Leyse v. Bank of Am. Nat'l Ass'n</u>, 804 F.3d 316, 323 (3d Cir. 2015) (explaining that "only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] violation" and that "[s]omeone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone"). Like <u>Stoops</u> Cunningham possess multiple cell phones that he will testify at during trial.

Mr. Cunningham intended to set-up the instant lawsuit as a way to make money. Thus, Mr. Cunningham did not suffer the type of harm that the TCPA was designed to prevent. Namely, Mr. Cunningham's privacy interests were not violated when he received calls from Defendants because he had invited these calls, in order to try to bring this lawsuit. In other words, Cunningham did not suffer the exact harm that Congress wanted to eliminate with the TCPA (to protect consumers from unwanted, intrusive telephone calls), because Mr. Cunningham wanted Defendants to call his cell phone. Accordingly, Mr. Cunningham fails to establish an injury-in-fact as to each and

every allegedly violative call because those purported injuries are premised upon a

bare statutory violation for which there was no actual harm.

Cunningham lied to SLC when he told it he was interested in its services on

April 28, 2015 (Exhibit 214), and he will testify to as much at trial. Cunningham lied

to SLC when he filled out an application with SLC and provided a fake bank account

number (Exhibit 214). But for these lies, SLC would not have made any calls to

Cunningham after April 28, 2015, and Defendants will testify to such. The April 28,

2015, call is not alleged as a violation of the TCPA in this lawsuit and is therefore not

at issue here (Dkt. 1). Cunningham cannot argue that he was harmed by the calls that

he invited with his lies. Further evidence that Cunningham is inviting these calls is the

fact that he possesses three cell phones for personal use, something he will testify to.

However, having three cell phones for personal use makes no sense from a logistical

stand point. More likely, Cunningham has three cell phones in order to collect calls

and file lawsuits, similar to the plaintiff in Stoops. While Cunningham might not hide

his cell phones in a shoebox, the outcome is essentially the same. With more phones in

his possession comes more phone numbers. With more phone numbers comes more

calls, and with more calls comes more lawsuits, over 150 lawsuits in filed in federal

court alone, something testified to by Cunningham during his deposition. Cunningham

invited the calls at issue not only by possessing multiple phones for the purpose of

collecting calls, but more importantly, by lying to SLC to induce more calls. Without

his lies, Cunningham would not have received any calls from SLC, and this lawsuit would not have been filed. Cunningham wanted the calls to come to his cell phone. Because he wanted the calls, there is no reason for congress to protect him from the calls. Therefore, under analogous caselaw, Cunningham could not bring his claim for violations of the TCPA.

<u>Nature of Misconduct</u>

As discussed above, Cunningham was not honest with SLC from the beginning. He has testified that he gave the wrong information to SLC, and feigned interest in SLC's services in order to get information about SLC. He has testified that if he told them he was going to sue them for breaking the law he would not be able get the information he required to bring his lawsuit against them. This testimony does not hold weight in light of the facts of this case. If Cunningham only wanted information from Defendants in order to bring this law, he had all the information he needed after the April 28, 2015 conversation, in the form of an email with his application (Exhibit 212).

Cunningham's explanation that he was seeking information to bring a lawsuit and punish Defendants for violations of the law does not explain why he continued to lie to and mislead SLC for over two years after he had the information he needed. A more likely explanation is that Cunningham intended to collect calls that he invited in order to drive up the number of violations he could allege. In other words, the nature of Cunningham's misconduct was to lie and to deceive SLC in order to collect a big

paycheck for himself. This is not the type of behavior that congress meant to protect

from in enacting the TCPA. Cunningham meets the second prong of the Unclean

Hands test.

<u>The Nature of the Misconduct to the Claimed Injuries.</u>

"The final prong of the [Unclean Hands] test requires examination of the

relationship between the plaintiff's misconduct and the claimed injuries. (*Blain,*

*supra,* 222 Cal.App.3d at p. 1060, 272 Cal.Rptr. 250.) The misconduct that brings the

unclean hands doctrine into play must relate directly to the transaction concerning

which the complaint is made. It must infect the cause of action involved and affect the

equitable relations between the litigants." <u>Id</u> at 76. There is no question that

Cunningham's misconduct of deceiving SLC into believing he was interested in its

services is directly related to this action. As discussed above, the first call to

Cunningham on April 28, 2015, is not at issue in this lawsuit. In fact, none of the calls

placed in 2015 or 2016 are at issue in this lawsuit (Dkt. 1). However, it was during

those calls that Cunningham expressed his interest in using SLC's services. It is also

during those calls that Cunningham received all the information he needed to bring a

lawsuit. Instead, he continued to deceive SLC stating he was interested in its services.

As SLC continued to make follow up calls to Cunningham to complete his application

he continued to count the calls, and tell them he was still interested. Every lie equated

to more calls, more calls equates to more alleged violations and a potentially bigger

payout for Cunningham. Cunningham's claimed injuries are a direct result of his deceit. Therefore, he meets the final prong of the Unclean Hands Test.

Cunningham meets all three prongs of the Unclean Hands test and therefore, it should be ruled that he came to this action with unclean hands, and therefore, he should not be able to continue this lawsuit with unclean hands.

4.    Unjust enrichment

As shown above, Plaintiff has unclean hands in bringing this lawsuit. "The elements of an unjust enrichment claim are the receipt of a benefit and the unjust retention of the benefit at the expense of another. Peterson v. Cellco P'ship, 164 Cal. App. 4th 1583, 80 Cal. Rptr. 3d 316 (2008). Plaintiff wishes to be enriched by $1,500 a call for calls that he not only invited, but that he did his best to encourage, he should not gain for statutory violations he himself provoked.

5.    Failure to mitigate

As noted above, but for his lies to Defendant, Plaintiff would not have a claim for any statutory damages. He never instructed Defendants not to call him, which would have ended the calls, he continually encouraged them, and failed to mitigate that damage, by encouraging it.

6.    Any violation was not a Willful or Knowing Violation

Neither the TCPA nor the FCC define the phrase "willfully or knowingly." See Sengenberger v. Credit Control Servs., Inc., No. 09C2796, 2010 WL 1791270, (N.D.

Ill. May 5, 2010), at *6. In this absence, courts have put forth a variety of standards interpreting the statutory text. See, e.g., Lary v. Trinity Physician Fin. & Ins. Servs., 780 F.3d 1101, 1107 (11th Cir.2015) ("The requirement of 'willful or knowing' conduct requires the violator to know he was performing the conduct that violates the statute."); Trindade v. Reach Media Grp., LLC, No. 5:12–CV–04759–PSG, 2014 WL 3572132, at *5 (N.D.Cal. July 18, 2014) ("Some courts have held that a defendant must know that the making of the call violates the TCPA, while others have held that a defendant need only know that the call is being made."). The Court in Haysbert v. Navient Sols., Inc., No. CV 15-4144 PSG (EX), 2016 WL 890297, at *10 (C.D. Cal. Mar. 8, 2016) agreed with those that have held the statute requires a defendant to intend or know that it was performing each of the elements of a TCPA claim (i.e. that it was making a call, to a person who did not provide prior express consent, using an automated system). See Lary, 780 F.3d at 1107; Olney v. Progressive Cas. Ins. Co., 993 F.Supp.2d 1220, 1227 (S.D.Cal.2014). Defendants will testify that each call was made manually to Plaintiff, that is, that the call was either dialed by an agent either clicking on link on his computer screen, or by picking up a handset and dialing Plaintiff's number each individual key at a time. If this type of dialing is somehow ruled to be an ATDS, it cannot be ruled to be a knowing violation, as defendants did not know they were using an ATDS.

7.   <u>Plaintiff was not Charged for Calls</u>

Plaintiff was not charged for the calls at issue, and he will testify as such. Therefore, his claim for UCL fails as he has not suffered any economic harm. "Under California law, recipient of text messages from gym did not suffer any injury from text messages, and thus lacked standing to pursue unfair practices claim against gym, since recipient had unlimited texting plan, such that he was not charged individually for text messages at issue <u>Van Patten v. Vertical Fitness Grp., LLC</u>, 22 F. Supp. 3d 1069 (S.D. Cal. 2014), <u>aff'd,</u> 847 F.3d 1037 (9th Cir. 2017)

8.   <u>Contribution</u>

As noted above, Plaintiff alleges that 117 calls came from Defendants. However, Defendants call logs show significantly less calls to the number at issue, 49 (Exhibit 203). If Plaintiff actually received these calls, they did not come from Defendants.

9.   <u>Plaintiff Has Not Suffered Injury</u>

The United States Supreme Court has held that "even in the context of a statutory violation," such as a violation of the TCPA, an injury must be "concrete" -- i.e., a litigant cannot "automatically" recover merely because "a statute grants [him] a statutory right and purports to authorize [him] to sue to vindicate that right." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1549 (2016). Pursuant to <u>Spokeo</u>, Mr. Cunningham cannot maintain his TCPA claim against Defendants unless he has suffered some

concrete injury or actual harm as a result of each and every allegedly violative call at issue. Id. at 1547.

> 10.   Plaintiff Does Not Have Standing to Bring his Claims

Applying Spokeo's concrete injury requirement in the TCPA context, it has been held that a litigant who takes affirmative steps to provoke or encourage violations does not suffer any concrete, or actual, injury and therefore cannot recover. See Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 797-99 (E.D. Pa. 2016) ("Plaintiff's interests, which include purchasing cell phones with the hope of receiving calls from creditors for the sole purpose of collecting statutory damages, are not 'among the sorts of interests [the TCPA was] specifically designed to protect.'"); Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1143, 1151, 185 L. Ed. 2d 264 (2013) (finding that "Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing--because the harm respondents seek to avoid is not certainly impending" and holding that "respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending"); Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 323 (3d Cir. 2015) (explaining that "only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a [TCPA] violation" and that "[s]omeone with a generalized interest in punishing

telemarketers, for example, would not qualify on that basis alone"). Like <u>Stoops</u>

Cunningham possess multiple cell phones that he will testify at during trial.

11.   <u>Intervening cause</u>

Plaintiff alleges that 117 calls came from Defendants. However, Defendants call logs

show significantly less calls to the number at issue, 49 (Exhibit 203). If Plaintiff

actually received these calls, they did not come from Defendants.

12.   <u>Reasonable practices</u>

Defendants have always conducted their business within the industry standards used

for companies in this location operating similar business. As such, if any violations did

occur, they were done with procedures in place to avoid such violations. Defendants

will make a showing that such violations could not have been willful or knowing, as

discussed above.

13.   <u>Statute of Limitations</u>

As Noted above and in its Answer to compliant (Dkt. 18), Defendants reserved the

right to supplement additional affirmative defenses as they become known to

Defendants. Defendants were not aware of Plaintiff's intent to claim time-barred

violations until July 11, 2019. Therefore, Defendants will argue that any violation

occurring after the allegations in the complaint, March 24, 2017, are time barred by the

statute of limitations.  "Except as otherwise provided by law, a civil action arising

under an Act of Congress enacted after the date of the enactment of this section may

not be commenced later than 4 years after the cause of action accrues." 28 U.S.C.A. §

1658 (West). Any new allegation that allegedly occurred four years before Defendants

were on notice that such allegations existed, are time bared and should not be allowed

to be heard.

### G. Third Parties

There are no third parties in this action.

### H. Evidentiary Issues

Defendants intend to move the court to exclude attorney work product that was

inadvertently produced during discovery. The work product at issue is a call log of

Defendants calls to Plaintiff. On the far right side of the call log is a "notes" column.

The top of the call log states "Work Product." The work product was created by adding

the attorney's mental impressions of each call at issue in the "notes" column. The

Ninth Circuit has ruled "no showing of relevance, substantial need or undue hardship

should justify compelled disclosure of an attorney's mental impressions, conclusions,

opinions or legal theories. This is made clear by the Rule's use of the term 'shall' as

opposed to 'may.'" Holmgren v. State Farm Mut. Auto. Ins. Co., 976 F.2d 573, 577

(9th Cir. 1992). Defendants discovered that this work product was produced to

Plaintiff and immediately notified Plaintiff of this. Defendants will propose that the

work product be supplemented with the same document that does not contain the

"notes" column.

## I.  **Issues of Law**

<u>Capacity</u>

The Ninth Circuit has not ruled on what constitutes capacity since the D.C. Circuit overruled the FCC's 2015 order regarding the definition of capacity in <u>ACA Int'l v. Fed. Commc'ns Comm'n</u>, 885 F.3d 687, 702–03 (D.C. Cir. 2018). However, the Second Circuit has spoken directly to the definition of capacity post <u>ACA</u> in <u>King v. Time Warner Cable Inc.</u>, No. 15-2474-CV, 2018 WL 3188716, at *7 (2d Cir. June 29, 2018), and its reasoning is sound:

> In sum, we conclude that the term 'capacity' in the TCPA's definition of a qualifying autodialer should be interpreted to refer to a device's current functions, absent any modifications to the device's hardware or software. That definition does not include every smartphone or computer that might be turned into an autodialer if properly reprogrammed, but does include devices whose autodialing features can be activated, as the D.C. Circuit suggested, by the equivalent of **'the simple flipping of a switch.'** Within those bounds, however, courts may need to investigate, on a case-by-case basis, how much is needed to activate a device's autodialing potential in order to determine whether it violates the TCPA.

<u>King v. Time Warner Cable Inc.</u>, No. 15-2474-CV, 2018 WL 3188716, at *7 (2d Cir. June 29, 2018). Defendants request that this court adopt the Second Circuit's definition of capacity as a factual issue related to how much is needed to activate a device's autodialing potential.

**LR 16-4.3 BIFURCATION OF ISSUES**

Defendants do not request bifurcation of issues

**LR 16-4.4 JURY TRIAL**

Plaintiff timely requested a Jury Trial with his complaint (Dkt. 1).

**LR 16-4.5 ATTORNEYS' FEES**

Defendants have made a rule 68 offer of judgment. If the applicable, Defendants will seek to move the court of an award of costs. "If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68. If applicable as costs, Defendants will seek fees incurred after the offer was rejected.

**LR 16-4.6 ABANDONMENT OF ISSUES**

Neither Party has abandoned any claim or defense.


Dated: July 15, 2019


**Law Offices of Jeffrey Lohman P.C.**


*/s/ Jeremy Branch*
Jeremy Branch
Law Offices Of Jeffrey Lohman, P.C.
4740 Green River Road, Suite 311
Corona, CA  92880
Telephone: (866) 329-9217 ext. 1009
Fax: (657) 246-1312
E-mail: JeremyB@jlohman.com
*Attorney for DEFENDANT*

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW