Jeremy Branch (State Bar No. 303240)
The Law Offices of Jeffrey Lohman, P.C.
4740 Green River Rd., Suite 310
Corona, CA 92880
(866) 329-9217 ext. 1009
JeremyB@jlohman.com
Attorney for Defendants

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT CALIFORNIA**
**CENTRAL DISTRICT**

| | |
|---|---|
| CRAIG CUNNINGHAM,<br><br>Plaintiff,<br>vs.<br>PERFORMANCE SLC LLC,<br>PERFORMANCE SETTLEMENT LLC,<br>DANIEL J. CRENSHAW<br><br>Defendant | Case No.: 8:18-cv-01093-AG-AGR<br><br>Honorable Andrew Guilford<br><br>Magistrate Judge Honorable Alicia G. Rosenburg<br><br>**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS PERFORMANCE SLC, LLC, PERFORMANCE SETTLEMENT LLC, AND DANIEL J. CRENSHAW MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF CRAIG CUNNINGHAM**<br><br>[Filed concurrently with Memorandum of Points and Authorities;; [Proposed] Judgment granting Summary Judgment ; and Proof of Service] |

Pursuant to Local Rule 56-1, defendant files the following Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment.

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| **Defendants' Uncontroverted Facts:** | **Defendants' Supporting Evidence:** |
|---|---|
| 1. Plaintiff Craig Cunningham ("Plaintiff" or "Cunningham") has filed at least 154 claims in federal court. | Dep. Cunningham 161:2-162:11 |
| 2. Cunningham possess three separate cell phones with three separate numbers. | Dep. Cunningham 56:10-21 |
| 3. For just one cell phone, the one at issue here, Cunningham receives over 200 calls a month from numbers he does not recognize. | Declaration Jeremy E. Branch ("Dec. Branch") ¶2 |
| 4. Cunningham has an unlimited talk and text plan and is not charged per call or text but pays a flat rate for all calls and texts he receives. | Dep. Cunningham 43:8-19 |
| 5. Cunningham has never put his number on the National Do Not Call Registry nor does he intend to in the future. | Dep. Cunningham 53:15-20 |
| 6. Performance Settlement SLC ("SLC") buys qualified leads from a third party. Cunningham was one such lead known as a "warm transfer" in other words, the third party contacted Cunningham on the phone and qualified him for SLC's services, then transferred him to an agent of SLC. | Declaration of Melody Parlier ("Dec. Parlier") ¶6; Dep. Crenshaw 33:3-19 |
| 7. SLC does not make solicitation calls, it follows up with client's who have expressed interest in its services. | Dep. Parlier 58:14-61:24; |
| 8. The text messages sent by SLC are to follow up with interested parties who have filled out an application or are interested in filling out an application for SLC's Services | Dep Parlier 66:15-23 |
| 9. SLC uses a phone system called Bluerock to make phone calls. | Dep. Parlier 47:17-49:8: Dep. Crenshaw 69:3-22; Dec. Parlier ¶22. |
| 10. This system is integrated into SLC's Client Relations Management ("CRM") software | Dep. Crenshaw 48:23-49:16 |

| | |
|---|---|
| 11. As configured and used by SLC, BlueRock's only dialing function is to allow an agent of SLC to view a number on the CRM, and, only if the agent chooses, the agent may click that number, which BlueRock will then dial, an agent is on the line the moment the call is initiated. | Parlier Dep. 48:4-25 |
| 12. Every call made by SLC is on a one to one ratio, meaning, that each call has a live agent on the line the moment the call is initiated. | Dec. Parlier Exhibit 8 |
| 13. The Bluerock phone system does not randomly or sequentially generate phone numbers. | Dec. Parlier Exhibit 8 |
| 14. The majority of calls made by SLC are manually dialed by the agent making the phone call. | Crenshaw Dep. 69:3-22 |
| 15. The agent will pick up a handset and call a number by dialing the number on the agent's telephone. | Crenshaw Dep. 69:3-22 |
| 16. On April 28, 2015, Defendant Performance SLC, LLC ("SLC") was connected to Plaintiff Craig Cunningham ("Plaintiff" or "Cunningham") by a lead generation company to see if he was interested in its services helping him consolidate his student loans. | Dec. Parlier ¶6; Dec. Parlier Exhibit 1. |
| 17. SLC told Plaintiff that it could help him lower his student loan payments for a fee. | Dec. Parlier Exhibit 1. |
| 18. Plaintiff told SLC that he was interested in the student loan services SLC offered. | Dec. Parlier Exhibit 1. |
| 19. During this conversation, Cunningham filled out an application with SLC in which he gave SLC, inter alia, his home address, his work address, his social security number, his date of birth and his cell phone number, (615) 212-91XX, the number at issue | Dec. Parlier Exhibit 1. Dep. Parlier 70:21-71:7; Dec. Branch ¶3. |

| | |
|---|---|
| here. Cunningham told SLC he wanted to secure its services and gave SLC his bank account number and routing number. | |
| 20. After filling out the application with SLC over the phone, the representative Cunningham was speaking with sent the application via email to Cunningham while still on the phone with Cunningham. Cunningham opened the email and verified all the information on the application, indicating that the information was correct. This information included his cell phone number, (615) 212-91XX, the number at issue in this matter. | Dec. Parlier Exhibit 1. |
| 21. Cunningham told SLC he wished to hire SLC to help him with his student loans. | Dec. Parlier Exhibit 1. |
| 22. Cunningham lied to SLC. The Bank account and routing number he gave to SLC was fake. His expressed intention to secure the services of SLC was also a false. Cunningham intended to use the application to set up this litigation. | Dep. Cunningham 185:25-9 |
| 23. On April 29, 2015, SLC called Cunningham again to help him complete the application started the day before. Cunningham said he was busy but would call back later to complete the application. | Dec. Branch Exhibit 1 |
| 24. On August 12, 2015, SLC again called Cunningham in an attempt to help him finish his application. Yet again, Cunningham was unable to finish the application. | Dec. Branch Exhibit 2 |
| 25. On August 13, 2015, SLC called Cunningham to finish his application. | Dec. Branch Exhibit 3 |
| 26. On August 20, 2015, SLC again called Cunningham to help him complete his application. This time he said he was busy and would call back later that same day. | Dec. Branch Exhibit 4 |
| 27. On September 8, 2015, SLC again reached out to Cunningham to help him finish | Dec. Branch Exhibit 5 |

| | |
|---|---|
| his application. He told them he would "get on it today." | |
| 28. On January 19, 2016, SLC again called Cunningham to see if he was still interested in finishing the application and if he needed any help. Cunningham responded that he was still interested and asked for another email to be sent to him | Dec. Branch Exhibit 6 |
| 29. On June 16, 2016, SLC left a message for Cunningham asking him if he was still interested in finishing his application. | Dec. Branch Exhibit 7 |
| 30. On March 25, 2017, Cunningham again spoke with an agent of SLC. He, again, told an agent for SLC that he was interested in obtaining SLC's services in helping him get his payments lowered on his student loans. He answered questions regarding his loan amount, and his monthly income. He provided SLC with his email address. This conversation was over four minutes long. Cunningham did not tell SLC he did not wish to receive phone calls from it at any time during this conversation. | Dec. Parlier ¶10; Dec. Parlier Exhibit 2 |
| 31. On April 21, 2017, Cunningham answered a call from SLC and, when asked if he was interested in SLC's services, he replied "yeah definitely." On the phone, Mr. Cunningham told SLC he would call Federal Student Aid ("FSA") to recover his password and then would call SLC back after speaking with FSA. Cunningham made plans with SLC to call SLC back to discuss his options. This call was over two minutes and fifty seconds long. Cunningham did not tell SLC he did not want to receive calls from it during this conversation. | Dec. Parlier ¶12; Dec. Parlier Exhibit 3. |
| 32. On April 25, 2017, Cunningham answered a call from SLC and was asked if he | Dec. Parlier ¶14; Dec. Parlier Exhibit 4. |

| | |
|---|---|
| was still interested in SLCs services. Mr. Cunningham again replied, “yeah definitely.” Cunningham ended the call soon after but did not inform the agent that he no longer wished to receive phone calls from SLC. | |
| 33. On May 2, 2017, Cunningham again spoke with SLC and told SLC he was interested in its services. He answered questions regarding his income, his family size, and his number of dependents. He gave SLC his login ID and temporary password for the FSA website in order for SLC to access the federal website on his behalf and work on lowering his student loans. He also provided his email address and received an email from the SLC agent with the agents contact information. He told the SLC agent he would call the agent back. This phone call was over six and half minutes long, and Cunningham did not tell the agent he was not interested in SLC’s services, nor that he did not want to receive phone calls. | Dec. Parlier ¶16; Dec. Parlier Exhibit 5. |
| 34. On May 8, 2017, Cunningham answered a call from SLC and was asked if he was still interested in working with SLC, he replied “Yeah, which company are you with?” the representative answered “SLC SLC” and Cunningham replied, “oh okay, yeah.” This conversation was over a minute long. Cunningham never mentioned that he did not want to receive calls from SLC. | Dec. Parlier ¶18; Dec. Parlier Exhibit 6. |
| 35. On May 22, 2018, Cunningham answered a call from SLC. The representative from SLC identified himself and asked if Cunningham was still interested in working with SLC. Cunningham replied, “I’m busy as of late with a little bit of travel, but I’m definitely interested and want some more information on it.” Cunningham did not tell | Dec. Parlier ¶20; Dec. Parlier Exhibit 7. |

| | |
|---|---|
| SLC he wanted calls to stop. In fact, he said he was wanted more information about SLC's services. | |
| 36. Subsequent to the call on May 22, 2018, SLC called Cunningham multiple times to complete the registration process started on April 28, 2015, but only because he expressed an interest in its services. | Dep. Parlier 58:14-61:24; Dep Parlier 66:15-23 |
| 37. Had Cunningham asked for the phone calls to stop, or even expressed that he was not interested in SLC's services, SLC would have stopped calling him, but he never asked for the calls to stop. | Dep. Parlier 58:14-61:24; Dep Parlier 66:15-23 |
| 38. Of the calls made to Cunningham, none of them were placed using an Automatic Telephone Dialing System ("ATDS") | Dep. Parlier 47:17-49:8: Dep. Crenshaw 69:3-22 |
| 39. None of the calls at issue were to market or sell anything to Cunningham, but instead were to finish the application started by Cunningham on April 28, 2015, because SLC does not make telemarketing or solicitation calls. | Dep. Parlier 58:14-61:24; Dep Parlier 66:15-23 |
| 40. Cunningham never intended to use the services of SLC but lied about his interests to build this lawsuit against SLC | Dep. Cunningham 185:25-9 |
| 41. Performance Settlement LLC made no calls to Cunningham. Performance Settlement LLC is a separate entity, that engages in a different business and is located in a different physical location than SLC. | Dep. Parlier 67:25-68:21; Dep. Crenshaw 37:22-38:13; Dec. Parlier ¶ 28. |
| 42. Daniel Crenshaw is the CEO of both SLC, and Performance Settlement. | Dep Crenshaw 38:2-13 |
| 43. Although not used by SLC, the BlueRock Dialing System may be programed to perform predictive or power dialing campaigns. | Dec. Parlier Exhibit 8 p. 1-21; Dep. Parlier 47::17-49:8 |
| 44. The process of setting up a predictive or power dialing campaign in BlueRock is a long and complicated process. | Dec. Parlier Exhibit 8 p.1 |

| | |
|---|---|
| 45.     Defendants have never made any calls, nor programed BlueRock to dial, in Power dialing mode. | Depo Parlier 71:23-72:20 |
| 46.     Defendants have never made any calls, nor programed BlueRock to dial, in Predictive dialing mode. | Depo Parlier 71:23-72:20 |
| 47.     Performance Settlement LLC has never made calls from, or owned any of the following numbers: (714) 215-9525, (714) 400-2617, (888) 534-4656, (888) 970-4329, (949) 201-1414, (949) 201-1692, (949) 359-4506, (949) 371-8669, (949) 386-1220, (949) 424-8785, (949) 429-0935 | Dec. Parlier ¶ 27 |
| 48.     SLC has never made calls from, or owned any of the following numbers: (714) 215-9525, (714) 400-2617, (888) 534-4656, (888) 970-4329, (949) 201-1414, (949) 201-1692, (949) 359-4506, (949) 371-8669, (949) 386-1220, (949) 424-8785, (949) 429-0935 | Dec. Parlier ¶ 27 |
| 49.     Performance Settlement never called Cunningham. | Dec. Parlier ¶ 28 |
| 50.     When asked about his financial earnings in 2016 and 2017, Cunningham's response shows that as much as half of his annual income comes from the TCPA lawsuits he brings forth. | Dec. Branch ¶ 11 |
| 51.     Defendants have never programmed their Bluerock system to automatically place phone calls | Dec. Parlier ¶ 29 |

Dated: August 9, 2019

**Law Offices of Jeffrey Lohman P.C.**

*/s/ Jeremy Branch*
Jeremy Branch
Law Offices Of Jeffrey Lohman, P.C.

4740 Green River Road, Suite 311
Corona, CA 92880
Telephone: (866) 329-9217 ext. 1009
Fax: (657) 246-1312
E-mail: JeremyB@jlohman.com
*Attorney for DEFENDANT*