Todd M. Friedman, Esq. (SBN 216752)
Adrian R. Bacon, Esq. (SBN 280332)
Law Offices of Todd M. Friedman, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: (877) 206-4741
Fax: (866) 633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com

*Attorneys for Plaintiff Craig Cunningham*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| CRAIG CUNNINGHAM,<br><br>              Plaintiff,<br><br>   v.<br><br>PERFORMANCE SLC LLC,<br>PERFORMANCE SETTLEMENT<br>LLC, DANIEL J. CRENSHAW, and<br>DOES 1-10,<br><br>              Defendants. | Case No. 8:18-cv-01093-AG-AGR<br><br>**OPPOSITION TO DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT**<br><br>**Date:** Monday, September 9, 2019<br>**Time:** 10:30 a.m.[1]<br>**Location:** 411 W. 4th St., Santa Ana,<br>CA 92701, Court 10D<br>**Judge:** Hon. Andrew J. Guilford<br><br>**Action Filed:** June 20, 2018<br>**Discovery Fact Cut-Off:** May 20,<br>2019<br>**Final Pre-Trial Conference:**<br>October 7, 2019<br>**Jury Trial:**  October 22, 2019 |

---

[1] The Court hears civil motions on Mondays at 10:00 a.m. The motion was noticed for 10:30 a.m.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

**I.   INTRODUCTION**................................................................**6**

**II.   STATEMENT OF RELEVANT UNDISPUTED MATERIAL FACTS**.....**8**

**III.   STANDARD ON SUMMARY JUDGMENT**...........................**11**

**IV.   ARGUMENT AND AUTHORITIES**...................................**13**

  A.   There Is Sufficient Evidence to Create a Triable Issue of Fact As to Whether Mr. Crenshaw and Performance Settlement Are Liable. ....................................13

    1.   There Is Sufficient Evidence in the Record, from Defendants' Own Call Records, That Both Performance SLC and Performance Settlement Made Calls to Plaintiff...........................................................................13

    2.   Mr. Crenshaw Is Liable for TCPA Violations Committed by His Companies As a Control Person. .......................................................14

  B.   Defendant's Unclean-Hands Argument Is a Question of Fact Inappropriate for Summary Judgment. It's Also Meritless. ......................................14

    1.   The Defense of Unclean Hands Is a Question of Fact, Not Law ...............14

    2.   Defendants' Argument of Unclean Hands Is Factually Meritless..............15

    3.   Defendants' Ad Hominem Attacks on Plaintiff, And Reference to Plaintiff's Past TCPA Lawsuits, Are Irrelevant to the Merits of This Case and Should Be Disregarded by This Court.............................................17

  C.   PLAINTIFF ESTABLISHES, AT THE VERY LEAST, A TRIABLE ISSUE OF FACT AS TO WHETHER DEFENDANTS ARE LIABLE UNDER THE TCPA ...........................................................................20

    1.   Defendant Admits That Solicitation Calls to Plaintiff Were Made without Prior Express Written Consent or Compliance Procedures ............................20

    2.   Defendant Has Already Admitted That The Calls To Plaintiff Were Made Using An ATDS .....................................................................25

**V.   PLAINTIFF REQUESTS A DECLARATORY ORDER OF WRONGDOING, FOR DEFENDANTS' ACT OF WILLFULLY BREACHING PLAINTIFF'S PRIVACY IN CONJUNCTION WITH THEIR MOTION PRACTICE**...........................................................**28**

**VI.   CONCLUSION**...............................................................**29**

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abramson v. CWS Apartment Homes, LLC,* No. 16-426, 2016 U.S. Dist. LEXIS 146627 (W.D. Pa. Oct. 24, 2016) ..........................................................17

*Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090 (W.D. Pa. July 31, 2018) ..........................................................16

*Balt.-Washington Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736 (D. Md. 2008).13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); ......................................................12

*Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010) .........................17

*Charvat v. NMP, LLC*, 656 F.3d 440 (6th Cir. 2011) .............................................20

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017) ................................................................................... 16, 18

*FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757 (N.D. Ill. 2016) .................................15

*Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985 (E.D. Mich. Nov. 8, 2013) .......................................13

*Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993 (D. Mass. Aug. 31, 2016) ........................................................17

*Jones v. Royal Admin. Servs.*, 887 F.3d 443 (9th Cir. 2018) .................................20

*Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970 (1999) .....14

*Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267 (E.D. Cal. Oct. 26, 2016) .......................................21

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 .................................................19

*Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579 (N.D. Ill. June 13, 2011) ................................................17

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408 (D. Md. 2011) .................13

*Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771 (N.D.W. Va. 2017) ...................18

*Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368 (2012) ..........................................19

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724 (9th Cir. 2007) ......................................16

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) .................. 14, 17

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) .........12

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Norse v. City of Santa Cruz*, 629 F.3d 966 (9th Cir. 2010) ....................................12

*Pollar v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464 (1962)........................12

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000)................................11

*Rice v. United States*, 166 F.3d 1088 (10th Cir. 1999)............................................12

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009)............... 20, 21

*Shelton v. Arete Fin. Grp.*, Case No. 2:18-cv-02187-CFK (E.D. Pa. Dec. 14, 2018), ECF No. 28 ...................................................................................................17

*Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978 (9th Cir. 2007) .........................12

*Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001) ...................13

*Tolan v. Cotton*, 572 U.S. 650 (2014)......................................................................11

*United States v. Credit Bureau Collection Servs.*, No. 2:10-cv-169 (S.D. Oh. Feb. 24, 2010), ECF No. 3........................................................................................15

*Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) ..............................................................................................18

*Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017) ..........21

*Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 U.S. Dist. LEXIS 85663 (W.D. Mich. June 21, 2012)........................................................13

**Statutes**

47 U.S.C. § 227(a)(1)................................................................................................24

47 U.S.C. § 227(b)(1)(A)(iii) ............................................................................. 19, 20

47 U.S.C. § 227(b)(1)(B)...........................................................................................20

47 U.S.C. § 227(b)(3)................................................................................................17

47 U.S.C. § 227(c) ....................................................................................................20

47 U.S.C. § 227(c)(5)................................................................................................17

Cal. Civ. Code § 1798.85(a)(1)................................................................................27

**Other Authorities**

137 Cong. Rec. S16, 205 (daily ed. Nov. 7, 1991)..................................................19

Jeff Leeds, *Fraud Squad of Sly Seniors Helps FBI,* L.A. Times (June 28, 1998), *available at* http://articles.latimes.com/1998/jun/28/news/mn-64526 .................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Press Release, Dep't Justice, Volunteer Retirees Go Undercover to Help Snare Dishonest Telemarketers, More Than 400 Arrests Made in 14 States (Dec. 7, 1995), https://www.justice.gov/archive/opa/pr/Pre_96/December95/609.txt.html ....................................................................................................................15

**Rules**

C.D. Cal. Civ. L.R. 5-4.3.2 ............................................................................27

Fed. R. Civ. P. 5.2(a)(1) ................................................................................27

**Regulations**

47 C.F.R. § 64.1200 ............................................................................... 20, 21

47 C.F.R. § 64.1200(a)(2) ..............................................................................21

47 C.F.R. § 64.1200(d)(1) ..............................................................................23

47 C.F.R. § 64.1200(f) ...................................................................................21

47 C.F.R. § 64.1200(f)(8) ..............................................................................22

47 C.F.R. § 64.1200(f)(8). .............................................................................22

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 (2003) ...................................................24

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830 (2012) ....................................................22

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

## I.    **INTRODUCTION**

Plaintiff Craig Cunningham ("Plaintiff") hereby opposes Defendants' PERFORMANCE SLC LLC, PERFORMANCE SETTLEMENT LLC, DANIEL J. CRENSHAW.  ("Defendants") Motion for Summary Judgment.

This is case is incredibly straightforward. Yet, perhaps, since Defendant's tome of a brief (despite it's 25 pages) quite clearly misses the mark on what is actually *relevant* to the resolution of this case, Plaintiff should start with a recitation of the actual, *relevant*, *material* facts.

- Defendants called Plaintiff on his cellular telephone to sell him student loan-related services.   (Plaintiff's Separate Statement of Material Facts filed contemporaneously herewith, ( hereinafter "MF") 1-4, 14).[2]

- When Plaintiff stayed on the line and tried to learn the identity of the entity who was violating his rights, Defendants continued to follow up on the lead to close the sale by calling him *over 100 times*, even though he never gave consent for them to call him.  (MF 16-17).

- *Defendants admit that they did not have Plaintiff's prior express written consent to call him.*  (MF 11)

- Defendants admit that the system they called Plaintiff with is a predictive dialer and has the capacity to autodial (which under Ninth Circuit authority makes it an automatic telephone dialing system ("ATDS")).  (MF 5-8)

- Defendant did not have a do-not-call policy in place during these calls, which it could present to Plaintiff upon request, at the time the calls were placed, in

---

[2]  Plaintiff's evidence in support of these facts is either attached to the contemporaneously-filed Declaration of Adrian Bacon, has already been filed on the docket, or is attached to Defendant's Motion.  All references to the evidence in support of each citation bearing an "MF" designation in the instant brief will cite to Plaintiff's Separate Statement of Material Facts, and the evidentiary support highlighted therein.

violation of the FCC's regulations promulgated in 2013 under the TCPA.  (MF 10)

- As Defendants' senior-most executive, Mr. Crenshaw had the power to stop their unsolicited telemarketing campaigns.  (Dkt. No. 18 ¶ 58)

This is a complete summary of the relevant facts necessary to adjudicate the instant Motion. Defendants have already admitted (*Id.*), stipulated to (Dkt. No. 61), testified to (Dkt. No. 55-7) and/or produced documents (E.g., Dkt. No. 55-5 at ECF 34-35) revealing these facts and many more of similar ilk, as summarized in Plaintiff's pre-trial brief.  Defendant's brief is a nonsensical journey down a long and winding road of irrelevancy. Here are the things that are ***completely irrelevant*** to this Court's legal analysis, yet which Defendants insists on repeating ***ad infinitum*** throughout their brief:

- Whether Plaintiff has been a party to any other ATDS cases in the past.
- How much of Plaintiff's income comes from past settlements he has obtained in other, unrelated, lawsuits.
- The purpose and reason that Defendants continued to call Plaintiff, over 100 times, without his consent
- The fact that Defendants' predictive dialer system was "complicated" to install.
- That Plaintiff allegedly feigned interest in what Defendants were telling him over the phone during these unlawful calls.

***Not one of the above issues is salient to this case or the legal analysis in which this Court must engage.*** The legal and factual issues in this case are not complicated, and there is ample authority the elements of the TCPA claim in Plaintiff's favor in any respect.  Plaintiff is the one who should be filing a summary judgment motion, not Defendants.  Defendants' Motion for Summary Judgment should be denied, in its entirety.

## II.   STATEMENT OF RELEVANT UNDISPUTED MATERIAL FACTS

Defendants present a wealth of facts that are anything but "material" facts in this case. The relevant, material facts, are all undisputed and in fact have all been previously stipulated to by the Defendants in this matter.   Defendants are in the business of selling student loan-related document preparation and debt consolidation services to consumers.  One method by which they solicit these services is through telemarketing.  They have sales scripts that their agents utilize to pitch such services once they believe they have an interested prospective customer.  The goal is to ultimately sell the services to the consumer in exchange for money.   MF 14. Defendant contacted Plaintiff for an identical purpose as just described – i.e. through traditional telemarketing calls to solicit his business with Defendants.   Despite Defendants doing business in this heavily regulated area, Defendants did not have any written TCPA compliance procedures until July 2018, i.e. right after this lawsuit was filed and served.  (MF 10).

Defendants' initial contact was Plaintiff was made in 2015 via an automated call placed by a third party cold caller, whom Defendants hired, which did not even make a pretense of obtaining consent before calling.[3]  Indeed, the contract between Defendants and Powers Marketing, Inc. a second lead generator hired in 2016 to place similar calls for Defendants, expressly stated that the calls were not being made with prior express consent and did not comply with the TCPA's telemarketing regulations, and that Defendants would be assuming the risk of liability by hiring it to place such calls on Defendants' behalf.  (MF 19 and 22); and Declaration of Adrian R. Bacon ("Bacon Decl.") Ex G at Pg 8 ¶ 6  (stating that the leads were acquired prior to the 2013 telemarketing regulations, that they have not been scrubbed, do not comply with the TCPA, and that Defendants would be contacting

---

[3] Defendants claimed to not be able to ascertain the identity of the first of three lead generators who were hired to place calls to Plaintiff on their behalf.  This seems untrue, but ultimately the detail is not of great importance.

them at their own risk).[4]  Plaintiff never signed up to receive any calls from any of Defendants nor from their lead generators, and Defendants do not contend that he did. (MF 1-2, 4, 14).  Even after Plaintiff allegedly played along on the initial call from the Defendants to ascertain the identity of the entities violating his privacy rights, he never provided any of Defendants with his phone number or told them to call him back.  Despite Defendants' repeated requests for permission to call him, Plaintiff in fact never agreed to any such request. (MF 1-2).[5]

SLC's internal call logs admit that calls to Plaintiff had been made by ATDS. (MF 15).  SLC's verified discovery response, later confirmed under oath by its Rule 30(b)(6) representative, indicate that "around 11 [calls to Plaintiff] were dialed without human intervention" and that "there were eleven (11) autodialed calls to Plaintiff, for which Defendant takes full responsibility." (MF 5). The call logs evidence 117 calls (including text messages) made by Defendants from 20 different phone numbers between 2015 to 2017. (MF 16). Defendants had no TCPA compliance measures in place during this time. (MF 10).  The remainder of the calls were made using the same system (Bluerock Communications), according to the testimony of Defendant's Rule 30(b)(6) witness and to all parties' stipulation. (MF 6-8). Call recordings confirm that Defendants' calls—including those placed from the sole relevant caller ID of which Defendants' Rule 30(b)(6) witness disclaimed knowledge—were indeed from Defendants. (MF 17).

On July 15, 2019, all parties stipulated that the phone number to which the calls are alleged has at all relevant times been Plaintiff's residential cell phone, that

---

[4] In other words, any conduct that violated the TPCA which occurred after the date these leads were first contacted by Defendant or its agents was done at Defendant's own reckless peril.  *Id.*

[5] Defendant clearly wanted to sell their services to Plaintiff, but if they wanted to do this, they should have followed the law or at least had compliance measures in place instead of breaking the law and blaming Plaintiff when he figured out who they were and attempted to hold them accountable for their own failures.

all the calls were made through the same system that Defendants have admitted to being an ATDS, and that Plaintiff was never Defendants' customer. (MF 2, 4)

Defendant's Rule 30(b)(6) representative confirmed under oath that all of the calls were routed through the same Bluerock Communications equipment that Defendants admit is an ATDS. (MF 6). Bluerock's dialer manual expressly states that the system is a predictive dialer, with the capacity to carry out mass auto-dialing campaigns of pre-automated calls to pre-programmed lists of numbers without human intervention, which can either be manually loaded into the system or auto-populated (i.e. a randomly or sequentially generated list). (MF 7-8). The facts are clear that Bluerock has the capacity to autodial from a list of numbers that it stores, which can themselves either be manually loaded or automatically generated, presumably randomly or sequentially. *Id*. Defendants stipulated, testified, and admitted in discovery that all of the calls and texts placed to Plaintiff were made using this system, and that the system had such capacity. (MF 3, 6-8, 12).

Bluerock's dialer manual describes the system as a "a sophisticated multimedia dialer system" that allows a user to "automatically reach out to contact new leads, follow up with existing customers, carry out collections, etc." Moreover, the system states that it can carry out "campaigns" "as a predictive dialer" and can also send automated SMS alerts, or other forms of automated advertising, in a manner "as simple or elaborate as you like." Bacon Decl. Ex I. The system has both predictive and power dialer applications. *Id*. Either can be set up to automatically dial campaigns of lists of numbers in a preprogrammed fashion without human intervention, which includes dialing certain numbers automatically for certain agents, dialing only during certain days or times, dialing certain numbers only a certain maximum number of times, creating automated intervals between the number of calls placed to a certain number, giving priority to certain numbers over others, dropping automated sound files in a voicemail when a voicemail is reached, sending automated SMS messages, cycling through a list of spoofed outbound caller ID

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

settings so the recipient does not know the identity of the caller, grouping outbound call lists by area code and geographic zone,  and many other automated features that can be preprogrammed for campaigns by a user of the Bluerock system.  *Id*.  The system can even auto-populate the lists of numbers for a campaign, based on pre-programmed criteria, as opposed to merely autodialing stored lists of numbers.  These features, i.e. the *capacity* of the system,

are described in the Bluerock manual produced by Defendants in discovery.  *Id*.

To summarize – Defendants called Plaintiff's cellular phone, which Defendants agree is also Plaintiff's residential phone.  Defendants were attempting to sell their services to Plaintiff.  Defendants stipulated, testified, and affirmed in by less than three different manners that they did not have prior express written consent to do this.  Their contracts with the third party lead generators put them on notice that the numbers being provided should not be called in such a manner without proper TCPA compliance procedures, and that they would be doing so at their own risk.  Defendants had no do not call policy in place that they could present to a consumer upon demand at the time they placed any of the calls to Plaintiff.  Even though they were on notice of their potential non-compliance for nearly three years by a signed contract entered into by their CEO, Defendants had no TCPA compliance procedures in place until after they were served with this lawsuit.  The Bluerock Communications system Defendants used to place the calls is an ATDS, because Defendants effectively stipulated that it is one, and because it's dialer manual clearly states that it is a predictive dialer with the capacity to store lists of numbers and autodial them either from a preprogrammed list, or from a list that the system itself can auto-populate.

These facts are not in dispute.  Why was this motion filed?

## III.   STANDARD ON SUMMARY JUDGMENT

To prevail on a motion for summary judgment, the movant must show that there is no genuine dispute as to any material fact and that the movant is entitled to

judgment as a matter of law.  In *Tolan v. Cotton*, 572 U.S. 650 (2014), the Supreme Court articulated the summary judgment standard:

> [C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment . . . .  [A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  In making that determination, a court must view the evidence in the light most favorable to the opposing party.

*Id.* at 656-57 (citations and internal quotation marks omitted).

Similarly, in *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 150 (2000), the Court stated: "[T]he court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  The parties seeking summary judgment, in this case Defendants, bear the burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  If a moving party fails to carry its burden of production, then "the nonmoving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." *Nissan Fire & Marine Ins. Co. v. Fritz Companies*, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  "Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to 'go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.'" *Celotex*, 447 U.S. at 324 (citing Fed. R. Civ. P. 56(c), (e)); *accord Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010).  "However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence." *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).  The Supreme Court

has cautioned that "summary procedures should be used sparingly . . . where motive and intent play lead roles . . . . It is only when witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." *Pollar v. Columbia Broadcasting Sys., Inc.*, 368 U.S. 464, 473 (1962).

## IV.   ARGUMENT AND AUTHORITIES

### A.   There Is Sufficient Evidence To Create A Triable Issue Of Fact As To Whether Crenshaw and Performance Settlement Are Liable

#### 1.   *There Is Sufficient Evidence In The Record, From Defendants' Own Call Records, That Both SLC and Performance Settlement Made Calls To Plaintiff.*

It is undisputed that SLC made many calls to Plaintiff. However, Defendant is arguing that it was ***only*** SLC, and not Settlement, that made the calls to Plaintiff's cellular phone number.  Puzzling however, Defendants already stipulated that both SLC and Settlement made calls to Plaintiff.  These stipulations are part of the Court's record.  The facts in the records are sufficient to show that there is, indeed, a triable fact as to whether Defendant Settlement was involved in, and liable, for the calls that were made to Plaintiff, or at least was an alter ego of the company that was.  The paperwork by which Defendants purchased their student loan leads identifies both Defendant Settlement and Defendant SLC, interchangeably, as the purchaser of the leads. (MF 19). On one of the calls to Plaintiff, the call representative identified herself as calling on behalf of "mother company" Defendant Settlement, and referenced Defendant Settlement's BBB rating and website, to identify its ***own*** BBB rating and website. (MF 20). This court cannot weigh the evidence that does exist in the record, and instead, must leave determination on liability (given these facts) to a trier of fact. There is no doubt a triable issue of fact as to whether Settlement was indeed one of the parties calling Plaintiff, especially when (1) they purchased the

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

leads that included Plaintiff's phone number, (2) they were identified by the calling representative as the "mother company" of whom the representative worked for (MF 20), and (3) Defendants already stipulated to this fact (Dkt. No. 61).

### 2. Mr. Crenshaw Is Liable For TCPA Violations Committed By His Companies As A Control Person.

To establish Mr. Crenshaw's liability for TCPA violations committed by his companies as a control person, Plaintiff must prove that Mr. Crenshaw had involvement in, oversight over and/or the ability to stop the calls at issue. *See, e.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 U.S. Dist. LEXIS 85663, at *21-22 (W.D. Mich. June 21, 2012); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415- 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force."); *Balt.-Washington Tel. Co. v. Hot Leads Co.*, 584 F. Supp. 2d 736, 744-45 (D. Md. 2008); *Texas v. Am. Blast Fax, Inc.*, 164 F. Supp. 2d 892, 898-99 (W.D. Tex. 2001).

It is undisputed that Mr. Crenshaw is the CEO of both Defendants. (Defendant's Undisputed Material Fact No.42) Defendants' extraordinary admission, and indeed their stipulation, that as "Defendants' senior-most executive, Mr. Crenshaw had the power to stop these unsolicited telemarketing campaigns" (MF 9) removes any doubt that Defendants lacked consent to robocall Plaintiff and establishes Mr. Crenshaw's control-person liability for the TCPA violations, rendering him susceptible to both legal and equitable relief.

### B. Defendant's Unclean Hands Argument Is Not Only Meritless, But Is A Question Of Fact, Inappropriate For Summary Judgment

### 1. The Defense of Unclean Hands Is a Question of Fact, Not Law, And Is Not Appropriate To Raise At The Summary Judgment

Defendants' mudslinging is no more apparent than in their improper request for summary judgment on the basis of an equitable defense, unclean hands, which is well settled to be a question of fact, and not a question of law. Amongst its thinly veiled attempt to sully Plaintiff's character, Defendants are asking this Court to weigh the "evidence" that they have presented. While Plaintiff submits that all of this "evidence" is irrelevant hearsay, and Defendants' battle cries that Plaintiff is a vexatious litigant are hotly disputed by the Plaintiff, the purpose of summary judgment is not for this court to make a determination on the credibility of any evidence, or weigh the evidence in either party's favor. This is an issue for the trier of fact. This is not a summary judgment issue, and so the Court should simply grant it no merit.. *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 978-79 (1999).

## 2. *Defendants' Argument of Unclean Hands Is Factually Meritless*

Perhaps sensing thin ice on their prior express consent defense, Defendants attempt to refashion their argument into an "unclean hands" defense and into various other purported defenses, styled differently and ever less enthusiastically but of the same gravamen. Among the problems fatal to Defendants' theory is that unclean hands is unavailable to Defendants because Plaintiff has not committed any misconduct, let alone criminal conduct, that would preclude him from recovering under the statutory claims at bar. Plaintiff is not Defendants' unpaid, unlicensed outside counsel and he was under no duty to disclose to them the violations of the law he suspected them to have committed and was investigating.

It's not a novel or narrow insight that immediately showing all of one's cards to a wrongdoer is not always prudent. "Testers" posing as interested individuals to identify discriminatory landlords "usually are praised rather than vilified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (Easterbrook, J.) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374-75 (1982)). The Federal Trade Commission, charged with enforcement of federal telemarketing laws,

regularly has investigators pose as potential customers. *E.g.*, Consent Decree at 18, *United States v. Credit Bureau Collection Servs.*, No. 2:10-cv-169 (S.D. Oh. Feb. 24, 2010), ECF No. 3 (authorizing FTC to use "lawful means," including "posing as consumers and suppliers" in order to monitor and investigate compliance with federal law).[6] Over twenty years ago, the Federal Bureau of Investigation recruited senior citizens to feign interest in telemarketers' products in order to identify them scammers.[7] Courts endorse the same sleuthing by private TCPA plaintiffs. *FTC v. Lifewatch Inc.*, 176 F. Supp. 3d 757, 771 (N.D. Ill. 2016) ("According to Defendants, Mey's statements should be ignored because she often misrepresented to telemarketers that the name 'Lifewatch' appeared on her caller identification in order to elicit their connection to Lifewatch. But the telemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch." (citation omitted)).[8]

---

[7] *Accord* Jeff Leeds, *Fraud Squad of Sly Seniors Helps FBI,* L.A. Times (June 28, 1998), *available at* http://articles.latimes.com/1998/jun/28/news/mn-64526; Press Release, Dep't Justice, Volunteer Retirees Go Undercover to Help Snare Dishonest Telemarketers, More Than 400 Arrests Made in 14 States (Dec. 7, 1995), https://www.justice.gov/archive/opa/pr/Pre_96/December95/609.txt.html (praising "Operation Senior Sentinel").

[8] Another court had this to say about Plaintiff: "The calls show that Cunningham appears to have been very good at eliciting information from the callers that he could later use in this lawsuit, which the [] Defendants suggest demonstrates that he was cultivating a TCPA claim. Cunningham's Second Amended Complaint, though, openly admits that the reason he eventually accepted one of the calls was 'to ascertain the identity of the party placing' them, and Cunningham has explained his sleuthing in significant detail himself. [] His later pleadings are entirely straightforward that he was in fact cultivating a claim. . . . It is safe to say that, when the telemarketers in this case called a phone belonging to Cunningham, they—presumably unwittingly—found themselves in the sights not of an ordinary hapless consumer, but a seasoned plaintiff, likely primed and ready to take them to court if their actions violated the TCPA. Nothing in the Constitution, though, requires a plaintiff to be a naïf." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F.

- 16 -
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendants cannot even point to a single incident where Plaintiff told them to call him, let alone the type of criminal or fraudulent conduct that would constitute unclean hands.  Defendants are simply unhappy that they got caught egregiously violating the telemarketing laws with no compliance procedures in place, and its only hope of avoiding liability is to turn the tables in the hope of making Plaintiff look like the bad guy for having the wherewithal to figure out who was violating his privacy and hold them accountable.  Defendants are the ones with unclean hands.

### 3. Defendants' Ad Hominem Attacks on Plaintiff, And Reference To Plaintiff's Past TCPA Lawsuits, Are Irrelevant To The Merits Of This Case And Should Be Disregarded By This Court

Defendants' "unclean hands" defense, and purported affirmative defenses more generally, are predicated on the fact that Plaintiff has filed TCPA lawsuits in the past. Under binding Ninth Circuit precedent and the consensus of courts trying TCPA claims, Defendants will not be permitted to introduce this evidence at trial, making each of these "material facts" and arguments, completely legally irrelevant. In *Molski v. M.J. Cable, Inc.*, a plaintiff alleging violations of the ADA "provided uncontradicted evidence that [the defendant] did not identify and remove architectural barriers, [but] the jury returned a verdict for the restaurant." 481 F.3d 724, 726 (9th Cir. 2007). The district court denied the plaintiff's motion for a new trial, speculating that the jury could have reasonably based its decision on the plaintiff's "record of litigiousness." *Id.* The Ninth Circuit reversed. *Id.* at 726. It went out of its way to note that evidence about past litigation and monetary recoveries therefrom was "irrelevant or at least far more prejudicial than probative," *Id.* at 728 & n.3 (citing Fed. R. Evid. 401, 403), even though those issues were not before it on

---

Supp. 3d 1187, 1194-95 (M.D. Tenn. 2017); *accord Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *18 (W.D. Pa. July 31, 2018) ("Again, even if true, the fact that Abramson may have posed as an interested consumer does not, in itself, negate standing in private TCPA lawsuits.").

appeal. Likewise, whether one has filed TCPA lawsuits in the past has no bearing on the elements of the claims alleged in this case.[9]

Courts brush aside the perverse notion that one who has been the victim of several different companies' illegal robocalls may not bring several different suits. *Murray*, 434 F.3d at 954 ("What the district judge did not explain, though, is why 'professional' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *accord Martin v. Bureau of Collection Recovery*, No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579, at *9 (N.D. Ill. June 13, 2011) ("Characterizing Plaintiff as a 'professional plaintiff' does not boost [the defendant's] argument in this discovery motion or any arguments in response to Plaintiff's motion for class certification."). A plaintiff's "decision to enforce his rights under the" TCPA in at least 16 prior cases "does not negate the existence of a cognizable injury." *Abramson v. CWS Apartment Homes, LLC,* No. 16-426, 2016 U.S. Dist. LEXIS 146627, at *4, 7 (W.D. Pa. Oct. 24, 2016).

Recently, a federal court admonished a TCPA defendant's counsel: "I don't care how many . . . cases he can file. . . . He can file one thousand eight hundred and fifty cases. . . . I'm going to handle each case on its merits. . . . Every single case." Tr. Oral Argument at 11:2-13, *Shelton v. Arete Fin. Grp.*, Case No. 2:18-cv-02187-CFK (E.D. Pa. Dec. 14, 2018), ECF No. 28.  By bringing actions against illegal robocallers seeking injunctive relief and statutory damages, Plaintiff is doing precisely what Congress intended for the public to do when it included those remedies in the TCPA. 47 U.S.C. § 227(b)(3), (c)(5); *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010); *Universal Underwriters Ins. Co. v. Lou*

---

[9] In fact, even if the sole source of one's income for several years were recoveries from TCPA suits, one would not lose one's standing to vindicate one's rights. *Jones v. Revenue Assistance Corp.*, No. 14-10218-GAO, 2016 U.S. Dist. LEXIS 136993, at *16-17 (D. Mass. Aug. 31, 2016).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

*Fusz Auto. Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005); *Rapid Response Monitoring Servs.*, 251 F. Supp. 3d at 1197 ("The TCPA does not merely contemplate self-interested plaintiffs—it encourages them."); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 784 (N.D.W. Va. 2017).

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited his rights because the calls alleged were not truly unwanted. Insofar as *Stoops*, cited by Defendant, endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Rapid Response Monitoring*, 251 F. Supp. 3d at 1196 (citation omitted) (noting that most people would accept $500 or more in exchange for enduring the privacy violation of a single robocall). Like the defendants in *Rapid Response Monitoring*, Defendants seems "to imagine a Constitution that limits the right to sue under the TCPA to those who are ignorant of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.* The reality is that Robocalls are annoying, and a hefty penalty was deemed necessary by Congress to disincentivize this destructive and obnoxious conduct. Plaintiff is thus doing exactly what Congress empowered consumers to do by enacting the statute. If Defendants don't like it, they can lobby their members of Congress.[10]

---

[10] This seems unlikely to be effective. Congress is considering criminalizing robocalls given how out of control telemarketers like Defendants have become.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

2

C. **PLAINTIFF ESTABLISHES, AT THE VERY LEAST, A TRIABLE ISSUE OF FACT AS TO WHETHER DEFENDANTS ARE LIABLE UNDER THE TCPA**

3

4

  **1.** ***Defendant Admits That Solicitation Calls to Plaintiff Were Made without Prior Express Written Consent or Compliance Procedures***

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

  "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall."  137 Cong. Rec. S16, 205 (daily ed. Nov. 7, 1991) (statement of Sen. Hollings); *see also Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1044 (9th Cir. 2018) ("*Marks*").). Congress enacted the TCPA specifically to combat the exponentially rising number of automated telemarketing calls that consumers receive on a daily basis, which interrupt their peace of mind, infringe on their privacy rights, and had, by the time the TCPA was enacted, increased to the level of both a disturbing public nuisance and a danger to public safety. *Marks* at 1043-45; S. Rep. No. 102-177, at 20 (1991). The Supreme Court has recognized that the statute reflects Congress's findings that consumers are outraged over the proliferation of automated telephone calls and that these intrusive, nuisance calls are an invasion of privacy.  *See Mims v. Arrow Fin. Servs. LLC*, 565 U.S. 368, 370 (2012).  Stated succinctly, people want to be left alone, Congress heard their cries, and it acted.  The TCPA combats the threat to privacy being caused by the automated practices, stating it is unlawful: "(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system **or** an artificial or prerecorded voice...(iii) to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  It is also unlawful to "initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(B).  As the Seventh Circuit put it, there is a "right to be left alone under the TCPA."  *Auto-Owners Ins. Co. v.*

*Websolv Computing, Inc.*, 580 F.3d 543, 551 (7th Cir. 2009).

To demonstrate a TCPA violation under Section b, Plaintiff need only show that Defendants (1) placed a call using an automatic telephone dialing system or an artificial or prerecorded voice; (2) to telephone number assigned to a cellular telephone service; (3) without the prior express consent of the called parties. 47 U.S.C. § 227(b)(1)(A)(iii) and § 227(b)(1)(B). The TCPA sets statutory damages of $500 per negligent violation and $1,500 per willful or knowing violation, and provides for injunctive relief. 47 U.S.C. § 227(b)(3) (A-B).[11] The question of whether a dialing system qualifies as an ATDS focusses primarily on the <u>capacity</u> of the system. However, because the statute is written in the disjunctive (key word: "or"), when a call is placed with a prerecorded voice, it is not required to be placed with an ATDS. 47 U.S.C. § 227(b)(1)(A)(iii) and § 227(b)(1)(B).

Plaintiff's second claim for relief (See Dkt. No. 1 ¶¶ 66-71.) is for illegal telemarketing, in violation of the TCPA, 47 U.S.C. § 227(c).[12] The elements of Plaintiff's second claim for relief are that (1) his residential or cellular telephone number (2) was called at least twice in any 12-month period (3) for initiating any telephone solicitation (4) while the caller (i) lacked a do-not-call policy available upon demand or lacked adequate training thereupon or (ii) during the calls, failed to disclose the name of the individual caller, the name of the person or entity on whose behalf the call was being made and/or a telephone number or address at which the person or entity could be contacted. 47 U.S.C. § 227(c); *Jones v. Royal*

---

[11] A single call using an ATDS without prior express consent violates the TCPA. *Satterfield v. Simon & Schuster, Inc*. 569 F.3d at 946, 956 (9th Cir. 2009).

[12] Plaintiff notes that Defendants argue that Plaintiff's UCL claims also fail due to their derivative nature of the TCPA claims. Plaintiff disagrees. For the reasons set forth herein, Plaintiff's TCPA claims will survive summary judgment. Accordingly, Plaintiff need not address Defendant's arguments as to Plaintiff's UCL claims separate and apart from Plaintiff's other arguments set forth herein.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1
2

*Admin. Servs.*, 887 F.3d 443, 448 (9th Cir. 2018); *Charvat v. NMP, LLC*, 656 F.3d 440, 447-50 (6th Cir. 2011); 47 C.F.R. § 64.1200(c)(2), (d)(1)-(4), (e) .[13]

3
4
5
6
7
8
9

The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated," *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009).  Prior express consent is an affirmative defense for which the TCPA defendant bears the burden of proof.  *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017).[14]  As a result, Defendant needs to show that Plaintiff provided *written* clear and unmistakable intent to receive telemarketing calls via an ATDS or artificial or prerecorded voice message.

10
11
12
13
14
15

"Express consent is '[c]onsent that is clearly and unmistakably stated.' *Black's Law Dictionary* 323 (8th ed. 2004)." *Satterfield*, 569 F.3d at 955 (interpreting the TCPA). "Express consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Van Patten*, 847 F.3d at 1044 (interpreting the TCPA). When, as here, a robocall to a cell phone is for telemarketing purposes, as it is here, the prior express

16
17
18
19
20
21
22

[13] Consent is not a defense under Plaintiff's § 227c theory of liability.  Plaintiff's case is instead directed at the fact that Defendants had no written do not call policies or procedures in place that it could present upon demand to Plaintiff or any other consumer, during any of the over 100 calls it placed to Plaintiff, and that Defendants were using fictitious names during the calls and not accurately identifying themselves.  The evidence in the case is that Defendants did not put written compliance policies in place until a year after the calls, or until after being sued and served with this lawsuit.  Thus, Plaintiff's position is that there is no defense to the § 227c claim in the record of the case.

23
24
25
26
27
28

[14] If a call "includes or introduces an advertisement" or "constitutes telemarketing," prior express consent must be *written.  See* 47 C.F.R. §§ 64.1200(a)(1)(2).  The regulation also defines "advertising" and "telemarketing." *See* 47 C.F.R. §§ 64.1200(f)(1)(12).  An "advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services." Id.§ (f)(1).  "Telemarketing" is "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id*. § (f)(12).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

consent required by 47 U.S.C. § 227(b) is "***prior express written consent.***" *Larson v. Harman Mgmt. Corp.*, No. 1:16-cv-00219-DAD-SKO, 2016 U.S. Dist. LEXIS 149267, at *10-11 (E.D. Cal. Oct. 26, 2016) (emphasis added); 47 C.F.R. § 64.1200(a)(2). That is a term of art.[15]

Moreover, the FCC has explained that the written agreement must include a clear and conspicuous disclosure informing the consumer that he or she is thereby consenting to receive telemarketing calls from or on behalf of a specific seller. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012). If a telemarketer lacks a consumer's wet-ink signature, it can instead use an electronic signature compliant with the requirements of the E-SIGN Act. *Id.* at 1844 ¶ 34.

Defendants complied with none of the foregoing provisions, nor, now that discovery has closed and exhibits have been disclosed, do they have any evidence to the contrary. Indeed, Defendants' Rule 30(b)(6) witness testified that Plaintiff never provided prior express written consent. (MF 11). Plaintiff's testimony establishes that he never provided consent to receive calls from Defendants, let alone prior express written consent within the meaning of 47 C.F.R. § 64.1200(f)(8). (MF 1-2.)

---

[15] The term "prior express written consent" means an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.(i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that:(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services. (ii) The term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law. 47 C.F.R. § 64.1200(f)(8).

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Defendants' Rule 30(b)(6) witness, as well as Defendants' discovery responses, and even Defendants' pre-trial stipulations concede that Plaintiff never provided prior express written consent. (MF 11, 13).   Defendants lack any evidence of the "prior express written consent" required to defeat the § 227(b) claims.

Defendants' consent defense to the § 227(c) claims is that they made some of those calls after Plaintiff had allegedly humored them, answering their questions as they tried, but failed, to get him to sign up for their services. Defendant also argues that these were not "sales" or "solicitation" calls, despite clear testimony to the contrary by their 30(b)(6) representative. These defenses will fail for several reasons.

First, factually, the undisputed evidence is that the initial contact to Plaintiff was made by an external cold caller hired by Performance Settlement, which cold caller did not even make a pretense of obtaining consent before calling; Plaintiff never signed up for any calls from any of Defendants. (MF 1-2).  Defendant admits that the calls were intended as "sales calls" because they were attempting to close the deal on the leads, and sell their student loan services. (MF 14). Second, substantively, even after Plaintiff allegedly played along, he never gave any of Defendants his phone number and, despite Defendants' repeated requests for permission to call him, he never agreed to any such request. (MF 1-2). Third, substantively, he confirmed that a number was his, but that falls short of the "unmistakably stated" consent to receive telemarketing or robocalls at that number by the Ninth Circuit in *Satterfield*.  Fourth, Defendants cannot carry their burden of proof on any (let alone all) of these points, as required by the Ninth Circuit in *Van Patten*. They have not met, and cannot meet, that burden.  Fifth, and most pertinently, prior express consent is not a defense to the theory of liability pursued by Plaintiff under § 227c, which, pursuant to the regulations set forth under *47 C.F.R. § 64.1200(c)(2)*, (d)(1)-(4), (e), required Defendants to have a complaint written do not call policy that could be presented to a consumer upon demand.  The pertinent regulation states as follows:  "The procedures instituted must meet the following

minimum standards: (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list."  There is no dispute that the written do not call policy for Defendants was not created until July 2018, which was after Defendants were served with this lawsuit, and well after the calls, which took place from 2015 to 2017.  Having consent is not a legal defense to Defendants' abject failings; though Defendants did not have that either.

Defendants filed a motion for summary judgment on the basis of having consent after they stipulated six ways from Sunday that they had no such consent. Again, why was this Motion filed?

## 2. *Defendant Has Already Admitted That The Calls To Plaintiff Were Made Using An ATDS*

Predictive dialers are autodialers.  This has been the law since 1992.  Even FCC's first ruling on the TCPA in 1992 recognized (at least tacitly) the importance of restrictions on equipment such as predictive dialers. Referring in part to "predictive dialers" to place live solicitation calls (7 FCC Rcd. 8752, 8756 (F.C.C. September 17, 1992)), the FCC then opined that "both live [referring again to live solicitation calls, such as with a predictive dialer] and artificial or prerecorded voice telephone solicitations should be subject to significant restrictions" (*Id.*). Since 2003, the FCC has long held, definitively, that predictive dialers qualify as an ATDS under the TCPA.  *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Report and Order, 18 FCC Rcd. 14014, 14115 ¶¶ 131-134 (2003).[16]  More recently, in *Marks*, the plaintiff alleged that the defendant had sent him three text messages.  The parties disputed whether the messages were sent using an autodialer, although they agreed that the equipment couldn't generate random or sequential numbers to be dialed.  Instead, to send a text message, the employee would have to select the recipients' phone numbers from a list of customers.  The

---

[16] The 2003 FCC Order is binding law.  So is *Marks.*

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

case thus turned on the statutory definition of an autodialer: "equipment that has the capacity" to "(A) to store or produce telephone numbers to be called, using a random or sequential number generator"; and "(B) to dial such numbers."   47 U.S.C. § 227(a)(1).

The Ninth Circuit in *Marks* concluded that the definition should be interpreted to cover equipment that has the ***capacity to "store" telephone numbers regardless of whether the equipment "us[es] a random or sequential number generator."*** Specifically, the panel held that "the term [ATDS] means equipment ***which has the capacity***—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers."   What was ultimately important to the Ninth Circuit's decision was the capacity of system, which inherently means what that system is capable of doing, as opposed to what it was used to do. The Ninth Circuit was very clear:

> "[W]e conclude that the statutory definition of ATDS is not limited to devices with the capacity to call numbers produced by a 'random or sequential number generator,' but also includes devices with the **capacity to dial stored numbers automatically**. Accordingly, we read § 227(a)(1) to provide that the term automatic telephone dialing system means equipment which has the capacity—(1) to store numbers to be called or (2) to produce numbers to be called, using a random or sequential number generator—and to dial such numbers.  We also reject Crunch's argument that a device cannot qualify as an ATDS unless it is fully automatic, meaning that it must operate without any human intervention whatsoever. By referring to the relevant device as an "automatic telephone dialing system," Congress made clear that it was targeting equipment that **could engage in automatic dialing, rather than equipment that operated without any human oversight or control**. 47 U.S.C. § 227(a)(1).

*Marks*, 904 F.3d at 1052-53 (emphasis added).[17]  Stated otherwise, for Plaintiff to prevail in this case, he must show that Bluerock has the capacity to 1) store numbers, and 2) dial automatically.  The evidence clearly demonstrates both are satisfied.

In this case, the call logs (produced by Plaintiff) evidence 117 calls (including text messages) made by Defendants from 20 different phone numbers from 2015 to 2017.  (MF 16). Defendants' own call log reveals an "ATDS" annotation next to several of their calls to Plaintiff. (MF 15). Defendant's Rule 30(b)(6) representative confirmed that all of the calls were routed through the same Bluerock Communications equipment that Defendants admit is an ATDS. (MF 6-8). Bluerock's dialer manual ***expressly states that the system is a predictive dialer***, capable of mass dialing campaigns of pre-automated calls to lists of numbers.  Such technology has the capacity to autodial and qualifies as an ATDS nationwide, let alone under the Ninth Circuit's definition of "automatic telephone dialing system," which is the most expansive in the country. *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1044 (9th Cir. 2018). Defendants' discovery responses and their testimony concerning the same admit to 11 unlawful calls.[18]  Even without more, ***this admission alone is more than enough to satisfy the requirements of Marks.*** Even so, the remainder of the calls were made using the same system, according to the testimony of Defendant's Rule 30(b)(6) witness and to all parties' stipulation. (MF 6-8).  The parties have also stipulated to the other elements: that the calls were to a telephone number assigned to a cellular telephone service owned or used by Plaintiff. (MF 2.) Call recordings confirm that Defendants' calls—including those

---

[17] This holding was confirmed in *Duguid v. Facebook*, 926 F.3d 1146 (9th Cir. 2019).

[18] SLC and Settlement, during their respective 30(b)(6) depositions, testified affirming the accuracy of exhibit 8 to the Parlier transcript. Dkt. No. 55-7 at ECF 30-31. That exhibit, at RFP #2, admits that "around 11 were dialed without human intervention."

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

placed from the sole relevant caller ID of which Defendants' Rule 30(b)(6) witness disclaimed knowledge—were indeed from Defendants. (MF 17).

## V. PLAINTIFF REQUESTS A DECLARATORY ORDER OF WRONGDOING, FOR DEFENDANTS' ACT OF WILLFULLY BREACHING PLAINTIFF'S PRIVACY IN CONJUNCTION WITH THEIR MOTION PRACTICE

Plaintiff requests that the Court find Defendants culpable regarding their repeated, willful breaches of his privacy in connection with their motions for summary judgment. Plaintiff has previously made clear to Defendants that he gets death threats from telemarketers. (Dkt. No. 37-3 at 3.) Nevertheless, in reckless disregard for his safety, when Defendants first moved for summary judgment, they published, ***unredacted and unsealed***, a document that Plaintiff had designated "CONFIDENTIAL" pursuant to the operative protective order, Dkt. No. 32. Defendants had never challenged (let alone successfully) that designation. (Dkt. No. 68-2; *see also* Dkt. No. 69-1 (FAFSA PIN, social security number, date of birth, etc.).) The document contained multiple instances of Plaintiff's complete social security number and date of birth. (Dkt. No. 68-2 at ECF 4, 8.) This was no oversight; on multiple occasions in their moving papers, ***Defendants explicitly referred to the presence of Plaintiff's social security number in the document.*** (Dkt. No. 66 at 12:22-26; Dkt. No. 67 at 3:24-28.) This exposure violated Federal Rule of Civil Procedure 5.2(a)(1), the related attestation on the CM/ECF log-in page, related Local Rule 5-4.3.2, and California Civil Code section 1798.85(a)(1), among other laws. Docket number 68-2 was but one of more than half a dozen documents containing Plaintiff's unredacted, unsealed confidential information filed improperly by Defendants in connection with their motions for summary judgment. (*E.g.*, Dkt. No. 67; Dkt. No. 68-1; Dkt. No. 69-1; Dkt. No. 69-2; Dkt. No. 70-1; Dkt. No. 78; Dkt. No. 81-3.) Many of these documents remain on the docket to this day, unsealed and unredacted, despite repeated requests from Plaintiff's counsel to Defendants' counsel to remediate Defendants' conduct.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the Court to determine that Defendants are at fault for these repeated, willful breaches; to order Defendants to cause the improperly published information to be removed from the docket; and to order Defendants not to violate the Court's rules or the Federal Rules of Civil Procedure in the future by filing further documents containing Plaintiff's confidential information. (In case the Court views this paragraph as a request for sanctions, the undersigned attests, pursuant to Local Rule 7-3, that Plaintiff's counsel met and conferred telephonically with Defendants' counsel regarding a potential motion for sanctions on this subject on August 1, 2019.)

## VI.   <u>CONCLUSION</u>

Undersigned Counsel continues to ask – "why was this Motion filed?"  The Court should be asking the same question, since the evidence and case law are clearly stacked against Defendant on every single issue in this case.  Summary Judgment should be reserved for cases where there genuinely is no triable issue of fact and/or where case law favors the moving party.  It is clear in this case that the Defendants are wrong in their interpretation of the facts, are asking the Court to ignore binding Ninth Circuit and FCC Orders which side definitively with Plaintiff, and that their only defense is a smear campaign that is likely inadmissible at trial anyways for lack of relevance.

For all reasons stated at length herein, Plaintiff hereby respectfully requests that this Court DENY Defendant's Motion for Summary Judgment, in its entirety.

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

1

Dated: August 18, 2019                    LAW OFFICES OF TODD M. FRIEDMAN, P.C.

2

3                                          By: /s/ Adrian R. Bacon

4                                              Todd M. Friedman

5                                              Adrian R. Bacon

6                                          Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

# CERTIFICATE OF SERVICE

United States District Court CM/ECF system

Notification sent electronically on this 18th day of August, 2019, to:

Honorable Judge Andrew Guilford
United States District Court
Central District of California

All Counsel of Record on the ECF

s/Adrian R. Bacon
Adrian R. Bacon, Esq.